## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x
                                          :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **GOLFSMITH INTERNATIONAL** | : | **Case No. 16-_____ (___)** |
| **HOLDINGS, INC.,** *et al.,* | : | |
| | : | **Joint Administration Requested** |
| **Debtors.**[1] | : | |
| | : | **Hearing Date:  TBD** |
| | : | **Objection Deadline:  TBD** |

-------------------------------------------------------x

### MOTION OF DEBTORS FOR ENTRY OF ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION FOR AND HEARING TO APPROVE SALE OF DEBTORS' ASSETS, (C) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) GRANTING RELATED RELIEF; AND (II)(A) APPROVING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING  RELATED RELIEF

Golfsmith International Holdings, Inc. ("**GS USA**") and its debtor affiliates in the

above-captioned chapter 11 cases, as debtors and debtors in possession (together with GS USA,

the "**Debtors**" or "**Golfsmith**"), respectfully represent:

### Preliminary Statement

1.      The Debtors seek to maximize the value of their estates for the benefit of

their creditors by conducting an auction for the sale of substantially all of their assets.  The

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Golfsmith International Holdings, Inc. (4847); GMAC Holdings, LLC (3331); Golf Town USA Holdco Limited (5562); Golf Town USA Holdings Inc. (7038); Golf Town USA, LLC (0259); Golfsmith 2 GP, L.L.C. (2218); Golfsmith Europe, L.L.C.(2408); Golfsmith Incentive Services, L.L.C. (2730); Golfsmith International, Inc. (7337); Golfsmith International, L.P. (4257); Golfsmith Licensing, L.L.C. (5499); Golfsmith NU, L.L.C. (2404); and Golfsmith USA, L.L.C. (2405). The Debtors' corporate headquarters is located at 11000 North IH-35, Austin, TX 78753.

Debtors intend to solicit bids for the auction from both parties seeking to operate their businesses as a going concern, and from parties seeking to liquidate the Debtors' assets for value.

2.      Three months prior to the commencement of these chapter 11 cases, the Debtors, together with their non-Debtor Canadian affiliates (collectively, "**Golf Town**" and, together with Golfsmith, the "**Company**"), initiated a comprehensive marketing process to sell the Company as a going concern, either through separate sales of Golfsmith and Golf Town, or through a sale of the entire Company.  The Company retained Jefferies LLC ("**Jefferies**") to serve as its investment banker and to design and execute the sale process.

3.      During this process, the Company received initial expressions of interest from 12 parties, seven of which continued into a second round of bidding.  Although the Debtors received bids to purchase the Company's U.S. business, the parties were unable to reach mutually acceptable terms before it became necessary for the Debtors commence these chapter 11 cases.  This phase of the sale process did, however, culminate in the Company receiving a binding proposal for the sale of its Canadian business, Golf Town, to a buyer that will operate Golf Town as a going concern (the "**Golf Town Transaction**"), subject to approval by the Canadian Court in the CCAA Proceeding (each as hereinafter defined).  The proceeds from the sale of Golf Town will benefit the Debtors' estates because they will be used to repay a significant portion of the claims of secured creditors who have claims against both Golf Town and the Debtors**.**

4.      In addition, holders of approximately 40% of the Company's Senior Secured Notes have signed a restructuring support agreement for a chapter 11 plan of reorganization for the Debtors.  The Debtors have therefore commenced these chapter 11 cases to implement either a sale of the U.S. business or assets in an auction process (the "**Sale**

**Process**"), or a restructuring through a chapter 11 plan process, to ensure the highest and best recovery for their stakeholders.

5.     Based on communications between Jefferies and parties interested in either purchasing the Company's U.S. business, or in liquidating the Company's U.S. business, the Debtors are confident that they will receive competitive bids for Golfsmith as a going concern at the proposed auction, as well as competitive liquidation bids for Golfsmith's assets should the going concern bids provide insufficient value. The Debtors therefore seek approval of bidding procedures that have been designed to provide them with maximum flexibility in executing their Sale Process, and request that the Court schedule a hearing to consider the relief requested herein on October 4, 2016. The Debtors also seek authorization to establish October 17, 2016 as the last date by which interested parties may submit bids for the Debtors' business or assets in advance of the auction the Debtors propose to hold on October 19, 2016.

6.     The Debtors believe this schedule is reasonable and appropriate for two reasons.  First, as more fully described below, the Company and Jefferies spent over two months prior to the commencement of these chapter 11 cases marketing their U.S. and Canadian businesses to 214 potential strategic and financial buyers.  The Company has already identified a purchaser for Golf Town, and has received expressions of interest and bids for Golfsmith.  The Debtors believe that they have contacted most if not all parties in the universe of potential purchasers that may have an interest in acquiring their business, and, therefore, such parties have already been afforded a significant amount of time to prepare for an auction. Second, a critical juncture for the Debtors' business commences in early November: the Debtors will need to both order a significant amount of new inventory for their stores in advance of the end-of-year holiday season, and to start to prepare their stores to execute their holiday season sales strategy.

Approving a sale of the Debtors' assets to a going concern bidder before November will allow the Debtors' significant cash needs to be funded by a new owner.

### Background

7.     On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

8.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

9.     Simultaneously with the commencement of these chapter 11 cases, Golfsmith's non-Debtor Canadian affiliates operating as Golf Town have commenced a proceeding (the "**CCAA Proceeding**") under the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (Commercial List) in Canada (the "**Canadian Court**").

10.     Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Brian E. Cejka in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**Cejka Declaration**"), which has been filed contemporaneously herewith and is incorporated by reference herein.

RLF1 15165438V.1

**Jurisdiction**

11.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

12.     By this Motion, pursuant to sections 105(a), 363, and 365, of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Rules 2002-1, 6004-1, and 9006-1, and solely to the extent consistent with the terms of any interim and final orders approving entry into debtor in possession financing and authorizing the Debtors' use of cash collateral entered by the Court in these chapter 11 cases (together, the "**DIP Orders**") the budget approved thereunder (the "**Approved Budget**"), and the DIP Documents (as defined in the DIP Orders) the Debtors request entry of the following:

a.     the "**Bidding Procedures Order**," substantially in the form attached hereto as **Exhibit "A"**[2]

(1)     authorizing and approving the "**Bidding Procedures**," substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition (the "**Sale**")

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order, the Bidding Procedures, or the Cejka Declaration, as applicable.

of substantially all of the Debtors' assets (the "**Assets**") or any portion thereof;

(2)      scheduling an auction of the Assets (the "**Auction**") to be held on October 19, 2016;

(3)      scheduling a hearing (the "**Sale Hearing**") to consider approval of the Sale to be held on October 28, 2016;

(4)      authorizing and approving (i) notice of the Auction and Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**"); (ii) publication of the content of the Sale Notice in the Wall Street Journal or USA Today (the "**Publication Notice**"); (iii) notice to each non-Debtor counterparty to an executory contract and unexpired lease (collectively, the "**Contracts**") of the Debtors' calculation of the amount necessary to cure all monetary defaults thereunder (the "**Cure Costs**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Assumption and Assignment Notice**"); and (iv) manner of notice of proposed assumption and assignment of certain Contracts (collectively, the "**Proposed Assumed Contracts**") in connection with a particular sale transaction (each, a "**Sale Transaction**") (the "**Proposed Assumed Contracts Notice**");

(5)      authorizing and approving the procedures for the assumption and assignment of Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and

(6)      granting related relief; and

b.      one or more orders (each, a "**Sale Order**"), as applicable, which shall be in form and substance reasonably satisfactory to the DIP Agent, authorizing and approving the following:

(1)      the Sale of the Assets free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets, with liens to attach to the proceeds of such sale(s);

(2)      the assumption and assignment of the Proposed Assumed Contracts; and

(3)      granting related relief.

RLF1 15165438V.1

13.     For the avoidance of doubt, the Debtors are requesting the foregoing relief only with respect to Golfsmith, and not Golf Town, which is subject to the jurisdiction of the Canadian Court in the CCAA Proceedings. Additionally, contemporaneously herewith, the Debtors have filed the Store Closing Procedures Motion[3] seeking authority to implement Store Closing Procedures (as defined in the Store Closing Procedures Motion) for purposes of surgically closing certain Closing Stores (as defined in the Store Closing Procedures Motion) and liquidating "second-generation" inventory. The Assets, which are the subject of the relief requested in this Motion do not include the Closing Stores (or any "second-generation" inventory marked for liquidation).

## Prepetition Sale Process

14.     Starting in June 2016, Jefferies began soliciting interest from potential buyers of the Company's Golfsmith and Golf Town businesses, both as a "global" concern, or for each to operate as a standalone business. Jefferies contacted 214 entities, including 37 potential strategic buyers and 177 potential financial buyers. Based on responses from those entities, Jefferies provided 67 potential buyers with access to a data room containing confidential information regarding the Company's businesses.

15.     Jefferies established July 20, 2016, as the deadline for interested parties to submit non-binding indications of interest to purchase all or part of the Company. This first round of the prepetition sale process resulted in the Company receiving 12 non-binding indications of interest from potential buyers. Ten first round bidders were financial investors, and two bidders were a consortium of strategic and financial buyers.

---

[3] *See Emergency Motion of Debtors for Approval of (I) Procedures for Store Closing Sales, and (II) the Assumption of the Liquidation Consulting Agreement* (the "**Store Closing Procedures Motion**").

16.     The Company directed Jefferies to invite seven of the first round bidders to submit final, binding bids to purchase substantially all of the assets of Golfsmith, Golf Town, or the entire Company. The Company initially established August 25, 2016 as the deadline for second round bidders to submit final bids, and subsequently extended that deadline to August 29, 2016, to allow second round bidders additional time to complete due diligence on the Company and finalize their binding bids.

17.     On August 29, the Company received four bids to purchase some or all of the Company's assets, which included (a) two bids to purchase Golf Town only, (b) one non-binding bid to purchase the entire Company, and (c) one non-binding bid to purchase Golfsmith. Prior to the commencement of these chapter 11 cases, the Company entered into a binding contract for the Golf Town Transaction. Since that time, Jefferies has also contacted several parties that may interested in purchasing and subsequently liquidating the Debtors' assets so that the proposed Auction process will include all potential buyers.

18.     The Debtors now seek the relief requested herein to complete their Sale Process, with the ultimate goal of maximizing value for their estates and stakeholders and either consummating a Sale or determining to proceed with a financial and operational restructuring.

**The Need for Timely Sale Process**

19.     As set forth further detail in the Cejka Declaration, the need for a timely Sale Process is driven, in large part, by the importance of closing a Sale prior to the start of Golfsmith's end-of-year holiday sales season, and by the milestones set forth under the Debtors' DIP Facility (the "**Milestones**").

20.     Golfsmith's business is highly seasonal, with peak sales occurring from April to July, the period leading up to and during the warm-weather golf season, and in advance of the December holiday gift-giving season.  In recent months, several of the Company's key

8

vendors have tightened trade terms, constricting the Company's ability to access inventory and, in several instances, have demanded cash in advance of delivering merchandise to the Company's stores.  Unfortunately, the timing of this trade contraction came at a critical period for the Company—during the peak warm-weather golf season.

21.    To give the Debtors the best possible opportunity to sell Golfsmith as a going concern, and to preserve the employment of Golfsmith's employees, the Debtors believe that the timely execution of this Sale Process is crucial.  Executing a going concern Sale with alacrity will restore the confidence of Golfsmith's vendors.  This, in turn, will allow a reorganized Golfsmith to acquire "new generation" golf equipment and other mainstay merchandise on more relaxed trade terms leading up to and during the upcoming holiday season, allowing Golfsmith to compete more effectively in a crowded market, and ultimately delivering value that a potential purchaser will pay for the Debtors' Assets.

22.    If the Sale Process is not executed quickly and efficiently, Golfsmith risks losing customers and significant revenue during one of its most important sales seasons.  Further, the Debtors want to complete the Sale Process prior to the holiday season so that both corporate- and store-level management can focus on executing the Company's business plan, maximizing revenues, and maintaining Golfsmith's long-standing goodwill with its customers.

23.    Access to postpetition financing is also critical to the Debtors' ability to operate their businesses during the Sale Process and pendency of these chapter 11 cases.  After extensive, arms'-length negotiations with the ABL Lenders, who also agreed to extend the Company postpetition financing (in such capacity, the "**DIP Lenders**"), the Debtors and the DIP Lenders agreed on a timeline that allows the Debtors to complete their Sale Process without creating undue risk of loss to the DIP Lenders.  In particular, purely as a backup measure, the

DIP Lenders require that the Debtors obtain an acceptable bid for the liquidation of their Assets in the event that they do not receive an acceptable going-concern bid and proceeding with a restructuring through a chapter 11 plan process becomes unfeasible. For the reasons described above, this determination would need to be made before Golfsmith's end-of-year holiday ordering begins.

24.    Accordingly, the Debtors and the DIP Lenders have agreed to the following Milestones, among others:

a.    on or before October 4, 2016, the Bankruptcy Court shall have entered the Bidding Procedures Order;

b.    on or before October 24, 2016,  the Debtors shall have completed the Auction;

c.    on or before October 28, 2016, the Debtors shall have received final approval from the Bankruptcy Court for the Sale or, as a backup, a liquidation of the Assets (the "**Backup Liquidation**"); and

d.    on or before October 30, 2016, the Debtors shall have executed all purchase agreements and all other relevant definitive documentation in connection with the Sale or Backup Liquidation, and shall have closed the applicable Sale Transaction on or before October 31, 2016.

25.    As set forth in the Cejka Declaration and the Debtors' DIP Motion filed contemporaneously herewith, access to the DIP Financing is critical to the Debtors' ability to continue their operations with minimal disruption on account of the commencement of their chapter 11 cases.  Failure to adhere to the Milestones could jeopardize the Debtors' available borrowings under the DIP Facility, and, in turn, compromise the Sale Process and the Debtors' ability to maximize recoveries for creditors. Accordingly, the Debtors request that the Court approve the relief requested herein in accordance with the proposed timeline for these chapter 11 cases.

**Bidding Procedures**

A.    **Overview**

26.    The Bidding Procedures are designed to provide for a fair, timely, and competitive Sale Process, consistent with the Milestones.  If approved, the Bidding Procedures will allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or otherwise best offer for the Assets in a timely manner.   As the Bidding Procedures are attached to the Bidding Procedures Order as Exhibit 1, they are not herein restated in their entirety.  Pursuant to Local Rule 6004-1(c), certain of the key terms of the Bidding Procedures are highlighted below:

    a.    Sale Objections.    Objections to a Sale Transaction   (each, a "**Sale Objection**"), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of any Sale Order (other Adequate Assurance Objections (as hereinafter defined)) must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (iii) be filed with the Court and served on (a) the Debtors, Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (b) the attorneys for the Debtors, (x) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and  (y) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); (c) the attorneys for any official committee of unsecured creditors appointed in these chapter 11 cases; (d) the attorneys for the DIP Lenders, (x) Morgan, Lewis & Bockius LLP, One Federal Street, 32nd Floor, Boston, MA 02110 (Attn: Sandra J. Vrejan, Esq. and Julia Frost-Davies, Esq.); and (y) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne, Esq.); (e) the attorneys (if applicable) of any applicable Successful Bidder(s); (f) the attorneys (if applicable) of any applicable Backup Bidder(s); and (g) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.) (the foregoing parties, the "**Objection Recipients**") by **October 21, 2016, at 5:00 p.m. (prevailing Eastern Time)** (the **"Sale Objection Deadline**"). All Sale Objections not otherwise resolved by the parties prior thereto shall be heard at the Sale Hearing.  The failure of any party to

timely file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline forever shall be barred from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the applicable Sale Transaction(s) contemplated by an applicable asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.  Notwithstanding the foregoing or anything herein to the contrary, and as set forth below, the deadline to file an Adequate Assurance Objection in connection with a proposed Sale Transaction shall be one (1) day prior to the applicable Sale Hearing.

b.    Bid Deadline.    Any person or entity interested in participating in the Auction (each, a "**Prospective Bidder**") must submit a Qualified Bid (as hereinafter defined) on or before **October 17, 2016 at 5:00 p.m. (prevailing Eastern Time)** in writing to (i) the Debtors, Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (ii) the attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); and (iii) the Debtors' investment banker, Jefferies LLC, 520 Madison Avenue, New York, New York 10022 (Attn:  Robert J. White) (the foregoing parties, the "**Bid Notice Parties**").    The Debtors may, after consulting with the Consultation Parties (as defined in the Bidding Procedures) and providing notice to the Sale Notice Parties (as hereinafter defined), extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment. The Debtors shall promptly provide copies of all bids received to the Consultation Parties; provided that, the Debtors shall not be required to provide to any Consultation Party any material, nonpublic information regarding bids for the Assets if such Consultation Party submits a bid to purchase all or any portion of the Assets. Further, the Debtors shall not be required to consult with any Consultation Party if such party is an active bidder for any of the Assets at the applicable time.

c.    Diligence.  To be eligible to participate in the Auction, each Prospective Bidder must execute a confidentiality agreement in form and on terms satisfactory to the Debtors. Any Prospective Bidder identified by the Debtors as reasonably likely to be a Qualified Bidder (as defined in the Bidding Procedures) that wishes to conduct  due diligence on the Assets may be granted access to all material information regarding the Assets; provided that, if any Prospective Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to

such Prospective Bidder any trade secrets or proprietary information unless the confidentiality agreement executed by such Prospective Bidder contains appropriate provisions to ensure that such trade secrets or proprietary information will not be used for an improper purpose or to gain an unfair competitive advantage.  If the Debtors determine that a Prospective Bidder does not constitute a Qualified Bidder, then such Prospective Bidder shall not be entitled to receive due diligence access or additional non-public information.

d.     Qualified Bid Requirements.  To qualify as a "**Qualified Bid**," the bid must be in writing and the Debtors must determine that the bid and the bid satisfies the following requirements:

(1)     Purchased Assets. A Qualified Bid must identify the following: (i) the Assets, or the portion thereof, to be purchased, including a list of any Proposed Assumed Contracts; (ii) the liabilities, if any, to be assumed, including any debt to be assumed; (iii) the Credit Bid, if applicable, and/or the cash purchase price of the bid; (iv) proposed adequate assurance of future performance with respect to any Proposed Assumed Contracts; and (v) whether Prospective Bidder intends is to operate the Debtors' business as a going concern, or to liquidate the business.

(2)     Identification of Bidder.  A Qualified Bid must fully disclose the legal identity of each entity that will be bidding for the applicable Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

(3)     Modified Agreement.   A Qualified Bid must constitute an irrevocable offer in the form of a "**Modified Asset Purchase Agreement**," including all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtors), and a marked copy of the appropriate form asset purchase agreement provided to Prospective Bidders eligible to participate in the Auction (each such agreement either a "**Sale Asset Purchase Agreement**" or a "**Liquidation Asset Purchase Agreement**," as applicable) reflecting the differences between the form asset purchase agreement and the applicable Prospective Bidder's Modified Asset Purchase Agreement.

(4)     Credit Bidding. In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "**Credit Bid**") pursuant

to section 363(k) of the Bankruptcy Code; provided that the Credit Bid complies with the terms of that certain Intercreditor Agreement (the "**Intercreditor Agreement**") dated July 24, 2012, by and among the ABL Agent, the Indenture Trustees, and the Credit Parties (as defined in the Intercreditor Agreement).  A Credit Bid may only be applied to reduce the cash consideration with respect to the Assets in which the party submitting the Credit Bid holds a security interest.  Each person or entity holding a valid, perfected security interest in Assets for which it submits a bid shall be deemed a Qualified Bidder with respect to its right to acquire such Assets by Credit Bid.

(5)     Financial Information.   A Qualified Bid must (i) include a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction(s) contemplated by the Modified Asset Purchase Agreement; (ii) unless the bid includes a Credit Bid pursuant to section 363(k) of the Bankruptcy Code and consistent with the terms of these Bidding Procedures, a statement that the bid is based on an all-cash offer; (iii) if the bid includes a Credit Bid pursuant to section 363(k) of the Bankruptcy Code, (a) a statement that the bid complies with the terms the Intercreditor Agreement, and (b) a statement that any remaining balance of the bid after reducing the applicable purchase price of the Assets by the amount of the proposed Credit Bid is based on an all-cash offer; and (iv) satisfactory evidence of committed financing or other financial ability to consummate the proposed Sale Transaction(s) in a timely manner.

(6)     Good Faith Deposit.   Each Qualified Bid (other than one that includes a Credit Bid) must be accompanied by a good faith deposit (the "**Good Faith Deposit**") in the form of cash (or other form acceptable to the Debtors in their sole and absolute discretion) in an amount equal to ten percent (10%) of the purchase price offered to purchase the Assets.  All Good Faith Deposits shall be held in escrow in a non-interest bearing account identified by the Debtors until no later than ten (10) days after the conclusion of the Auction unless such bidder is selected as the Successful Bidder or as a Backup Bidder (as hereinafter defined), and thereafter returned to the respective bidders in accordance with the Bidding Procedures.

(7)     Representations and Warranties. A Qualified Bid must include the following representations and warranties: (i) expressly state that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Assets prior to submitting its bid; and (ii) a statement that the Prospective Bidder has relied solely upon its own independent review,

investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Modified Asset Purchase Agreement, ultimately accepted and executed by the Debtors.

(8)     <u>Authorization</u>.    A Qualified Bid must include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing of the proposed Sale Transaction(s) in accordance with the terms of the bid and these Bidding Procedures.

(9)     <u>Other Requirements</u>.  A Qualified Bid shall (i) state that the bid is formal, binding, and unconditional (except as set forth in the Prospective Bidder's Modified Asset Purchase Agreement), is not subject to further due diligence, and is irrevocable until the earlier of either (a) for a Sale, (x) December 31, 2016 and (y) the first business day following the close of a Sale Transaction with a Successful Bidder for the applicable Assets, or (b) for a Backup Liquidation, (x) November 31, 2016, and (y) the first business day following the close of a Sale Transaction with a Successful Bidder for the applicable Assets; (ii) expressly state that the Prospective Bidder is committed to executing an asset purchase agreement and all other relevant definitive documentation for the proposed Sale Transaction by October 30, 2016, and closing the proposed Sale Transaction by October 31, 2016; (iii) subject to the Debtors' right to enter into a Stalking Horse Agreement that provides for Stalking Horse Bid Protections (each as hereinafter defined), expressly state and acknowledge that the Prospective Bidder shall not be entitled to any break-up fee, expense reimbursement, or other bid protection; (iv) expressly waive any right of the Prospective Bidder to assert any substantial contribution claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets; (iv) not contain any financing contingencies of any kind; (v) not contain any condition to closing the proposed Sale Transaction on the receipt of any third party approvals (excluding the Bankruptcy Court and any applicable required governmental and/or regulatory approval); (vi) represent that all necessary filings under applicable law and regulation will be made and that the payment of the fees associated therewith will be made by the Prospective Bidder; (vii) expressly state that the Prospective Bidder agrees to serve as a backup bidder (a "**<u>Backup Bidder</u>**") if such bidder's Qualified Bid

is selected as the next highest or next best bid after the Successful Bid for the applicable Assets; (viii) be accompanied with any reasonable information requested by a consumer privacy ombudsman, should one be appointed in these chapter 11 cases pursuant to section 363(b)(1)(B) of the Bankruptcy Code; (ix) include contact information for the person(s) the Debtors should contact with questions about the Prospective Bidder's bid; and (x) be received by the Bid Notice Parties by the Bid Deadline.

e.    Selecting Qualified Bidders.  The Debtors shall, in consultation with the Consultation Parties, make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have qualified as Qualified Bids by no later than **October 18, 2016 at 5:00 p.m. (prevailing Eastern Time);** provided that, if the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, determine to extend the Bid Deadline, the Debtors shall be required to notify bidders whether their bids have qualified as Qualified Bids by no later than two (2) days after the newly-scheduled Bid Deadline.

With the goal and primary purpose of selling substantially all of the Assets, the Debtors, in their sole and absolute discretion, may accept as a single Qualified Bid, multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.  The Debtors may permit otherwise Qualified Bidders who submitted bids by the Bid Deadline for less than a substantial (but nevertheless a material) portion of the Assets but who were not identified as a component of a single Qualified Bid consisting of such multiple bids, to participate in the Auction and to submit higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids for non-overlapping material portions of the Assets, as part of such a single Qualified Bid for overbid purposes.  The Debtors may, after consulting with the Consultation Parties, amend the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment.

Antares Capital LP ("**Antares**"), both in its capacity as DIP Agent and as ABL Agent, and its respective designees, affiliates, and assigns, automatically shall be deemed Qualified Bidders, and their respective bids automatically shall be deemed to constitute Qualified Bids, regardless of whether their respective Credit Bids meet the requirements set forth above.  Antares shall not be required to submit a Good Faith Deposit in connection with any Credit Bid.

f.    Bid Protections.  The Bidding Procedures do not provide for bid protections to a stalking horse or initial bidder at this time.  The Debtors and their advisors are, however, currently in negotiations with one or more potential stalking horse bidders for the Assets (each, a "**Stalking Horse**

**Bidder**"). To that end, in the event that the Debtors enter into an asset purchase agreement with a Stalking Horse Bidder (each, a "**Stalking Horse Agreement**"), the Debtors reserve the right, at any time prior to the Auction, after consulting with the Consultation Parties, to (i) deem such Stalking Horse Agreement a Qualified Bid; (ii) designate such Stalking Horse Agreement as a Baseline Bid (as hereinafter defined); and (iii) file a motion, to be heard by the Bankruptcy Court on an expedited basis (each, such motion, a "**Stalking Horse Motion**"), seeking to provide such Stalking Horse Bidder with some or all of the following bid protections: (a) a break-up fee; and/or (b) expense reimbursement (collectively, the "**Stalking Horse Bid Protections**"). To the extent the Debtors enter into a Stalking Horse Agreement prior to the hearing on entry of the Bidding Procedures Order, the Debtors may seek to have the Stalking Horse Motion heard at such hearing. The Stalking Horse Motion, in addition to summarizing, and seeking approval of, one or more Stalking Horse Bid Protections, will (i) attach the Stalking Horse Agreement and (ii) include a summary thereof in accordance with Local Rule 6004-1(b).

g.   The Auction.   If the Debtors receive at least one timely Qualified Bid with an acceptable purchase price, the Debtors shall conduct the Auction. The Auction, if required, will be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **October 19, 2016 at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties. The Consultation Parties and/or their respective representatives shall be permitted to attend the Auction.

(1)   Each Qualified Bidder shall appear in person at the Auction or through a duly authorized representative. Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the sale; and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

(2)   Baseline Bid.   Bidding shall commence at the amount of the Qualified Bid or combination of Qualified Bids that the Debtors, in consultation with the Consultation Parties, determine in their business judgment to be the highest and/or best Qualified Bid (the "**Baseline Bid**").

(3)   Minimum Overbid.   Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid for the relevant Assets. The Debtors shall, after consulting with the Consultation Parties, announce the minimum

required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**"), which will be announced at the outset of the Auction. The Debtors may, in their reasonable business judgment, and after consulting with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

(4)     Highest or Best Offer.    After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the relevant Assets (the "**Leading Bid**"). Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

(5)     Successful Bid.    Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the highest or otherwise best bid(s) for the applicable Assets (each such bid, a "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction for the applicable Assets of the identity of the bidder that submitted the Successful Bid (each such bidder, the "**Successful Bidder**") and the amount of the purchase price and other material terms of the Successful Bid.

The Auction may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids and make modifications to the form asset purchase agreement or their Modified Asset Purchase Agreement, at the Auction to improve their bids. The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtors shall have the right, after consulting with the Consultation Parties, to determine, in their reasonable business judgment, which bid is the highest or otherwise best bid and reject at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, or the best interests of the Debtors and their estates.

(6)     Backup Bid. Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which Qualified Bid  is the next highest or otherwise best Qualified Bid

for the relevant Assets after the Successful Bid (each such Qualified Bid, a "**Backup Bid**"); and (ii) notify all Qualified Bidders at the Auction for the applicable Asset of the identity of the Backup Bidder and the amount of the purchase price and other material terms of the Backup Bid.

Backup Bids shall be open and irrevocable until the earlier of (i) for a Sale, (a) December 31, 2016 and (b) the first business day following the closing of a Sale Transaction with the Successful Bidder for the applicable Assets; or (ii) for a Backup Liquidation, (a) November 31, 2016 and (b) the first business day following the closing of a Sale Transaction with the Successful Bidder for the applicable Assets.  If the Successful Bidder for the applicable Assets fails to consummate a Sale Transaction, the Backup Bidder shall be deemed the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate a Sale Transaction for the applicable Assets with the Backup Bidder.

(7)    Modification of Procedures.  The Debtors may, after consulting with the Consulting Parties, announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify these Bidding Procedures.

(8)    No Late Bids. Unless the Bankruptcy Court orders otherwise upon application of the Debtors, the Debtors shall not consider any bids submitted after the conclusion of the Auction and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(9)    Auction Results. On or before **October 21, 2016 at 5:00 p.m**. **(prevailing Eastern Time)**, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the website of the Debtors' claims and noticing agent and administrative advisor, Prime Clerk, LLC, located at http://cases.primeclerk.com/Golfsmith    (the "**Prime Clerk Website**")  the results of the Auction, which shall include (i) a copy if the Successful Bid(s) and Backup Bid(s); (ii) the identities of the Successful Bidder(s) and Backup Bidder(s); (iii) the Notice of the Proposed Assumed Contracts;  and (iv) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts; provided that, if the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, determine to hold the Auction at a later date, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website, the

results of the Auction no later than two (2) days after the conclusion of the Auction.

h.   <u>Reservation of Rights</u>.   The Debtors reserve the right to, in their reasonable business judgment, and in consultation with the Consultation Parties, modify these Bidding Procedures at any time, including, without limitation, to extend deadlines and proposed dates set forth herein, modify bidding increments, waive terms and conditions set forth herein, impose additional terms and conditions, including with respect to Qualified Bids, Successful Bids, Backup Bids, Minimum Overbids, adjourn or cancel the Auction, and adjourn the Sale Hearing.

**B.**    **<u>Key Dates and Deadlines</u>**

27.    Consistent with the Milestones, the Bidding Procedures, and the Debtors' need to consummate the Sale prior to this calendar year's holiday season, the Debtors propose the following key dates and deadlines for the Sale Process:

| | |
|---|---|
| **October 4, 2016** | Hearing on Bidding Procedures Motion and entry of Bidding Procedures Order |
| **October 17, 2016, at 5:00 p.m.** | Bid Deadline |
| **October 18, 2016, at 5:00 p.m.** | Deadline for Debtors to notify bidders of their status as Qualified Bidders |
| **October 19, 2016, at 10:00 a.m.** | Auction, to be held at offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 |
| **October 21, 2016, at 5:00 p.m.** | Deadline to file Sale Objections and Cure Objections |
| **October 21, 2016, at 5:00 p.m.** | Deadline to publish Auction results, including (i) copy of the Successful Bid(s) and Backup Bid(s); (ii) the identity of any Successful Bidder(s) and Backup Bidder(s); (iii) list of Proposed Assumed Contracts; and (iv) each Successful Bidder's and Backup Bidder's proposed adequate assurance of future performance |
| **October 27, 2016, at 5:00 p.m.** | Deadline to file Adequate Assurance Objections |
| **October 28, 2016** | Hearing to approve proposed Sale Transaction(s) |
| **October 30, 2016** | Deadline to execute all purchase agreements and other relevant definitive documentation in connection with the Sale or Backup Liquidation |
| **October 31, 2016** | Deadline to close Sale Transaction(s) |

C.    **Noticing Procedures**

28.    The Bidding Procedures provide for the following noticing procedures (collectively, the "**Noticing Procedures**"):

a.    <u>The Sale Notice</u>.  The Sale Notice shall include the date, time, and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested in this Motion.

(1)    <u>Auction</u>.  If the Debtors receive a Qualified Bid for an acceptable purchase price, the Debtors propose to hold the Auction at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153 on **October 19, 2016, at 10:00 a.m. (prevailing Eastern Time).**

(2)    <u>Sale Objection Deadline</u>.  The Debtors propose that the deadline for objecting to the proposed Sale be **October 21, 2016 at 5:00 p.m. (prevailing Eastern Time).**

(3)    <u>Sale Hearing</u>.  The Debtors propose the Sale Hearing to be held on **October 28, 2016 (prevailing Eastern Time).**

Within two (2) days after entry of the Bidding Procedures Order, the Debtors shall cause the Sale Notice to be filed with the Court and served by email, mail, facsimile or overnight delivery on: (i) the Consultation Parties (as applicable); (ii) all persons and entities known by the Debtors to have expressed an interest to the Debtors in a Sale Transaction involving any of the Assets during the past twelve (12) months, including any person or entity that has submitted a bid for any of the Assets, as applicable; (iii) all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors); (iv) all non-Debtor parties to any Contracts that could be assumed or rejected in connection with a Sale Transaction; (v) any governmental authority known to have a claim against the Debtors in these chapter 11 cases; (vi) the United States Attorney General; (vii) the Antitrust Division of the United States Department of Justice; (viii) the United States Attorney for the District of Delaware; (ix) the Office of the Attorney General in each state in which the Debtors operate; (x) the Federal Trade Commission; (xi) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (xii) all other persons and entities as directed by the Bankruptcy Court (the foregoing entities in clauses (i) through (xii), the "**Sale Notice Parties**").

b.      Publication Notice.  Within five (5) days after entry of the Bidding Procedures Order, the Debtors shall cause the Publication Notice to be published once in the Wall Street Journal or USA Today.

c.      Qualified Bids and Baseline Bids. On or before **October 18, 2016 at 5:00 p.m. (prevailing Eastern Time),** the Debtors shall notify bidders of whether they are Qualified Bidders and invite them to attend the Auction.

d.      Auction Results.  On or before **October 21, 2016 at 5:00 p.m. (prevailing Eastern Time)**, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website the results of the Auction, including (i) a copy of the Successful Bid(s) and Backup Bid(s); (ii) the identity of any Successful Bidder(s) and Backup Bidder(s); (iii) the Notice of Proposed Assumed Contracts; and (iv) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the applicable Proposed Assumed Contracts.

29.     The Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the Sale Process, including, among other things, the deadline to object to the Sale and assumption and assignment of Contracts; the Auction date; the Bid Deadline; and the Sale Hearing date.  Accordingly, the Debtors request that the Court approve the Noticing Procedures.

**Assumption and Assignment Procedures**

30.     In connection with the Sale, the Debtors will seek to assume and assign to the Successful Bidder(s) the Proposed Assumed Contracts.  The Assumption and Assignment Procedures set forth herein will, among other things, govern the Debtors' provision of notice to non-Debtor counterparties to the Contracts (each, a "**Counterparty**") and the Debtors' good faith calculations of Cure Costs with respect thereto.  Specifically, the Assumption and Assignment Procedures are as follows:

a.      Assumption and Assignment Notice.  Within two (2) days after the entry of the Bidding Procedures Order, the Debtors shall file with the Court, serve on the Sale Notice Parties, including each Counterparty to the Contracts, and cause to be published on the Prime Clerk Website, the Assumption and Assignment Notice, which shall (i) identify the Contracts;

22

(ii) list the Debtors' good faith calculation of the Cure Costs with respect to each Contract; (iii) expressly state that assumption or assignment of a Contract is not guaranteed and is subject to Court approval; and (iv) prominently display the deadline to file objections to the assumption, assignment, or sale of the Debtors' Proposed Assumed Contracts.

b.      <u>Proposed Assumed Contracts Notice</u>.  No later than two (2) days after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty, and cause to be published on the Prime Clerk Website the Proposed Assumed Contracts Notice.

c.      <u>Objection Recipients</u>. Any Counterparty that wishes to object to the assumption or assumption and assignment of a Contract to a Successful Bidder must file with the Court and serve its objection on the Objection Recipients.

d.      <u>Cure Objections.</u>

(1)     <u>Cure Objection Deadline</u>. Any Counterparty to a Proposed Assumed Contract that wishes to object to the proposed assumption, assignment, and sale of the Proposed Assumed Contract, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding monetary defaults then existing under such contract (each, a "**Cure Objection**") shall file with the Court and serve on the Objection Recipients its Cure Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **October 21, 2016 at 5:00 p.m. (prevailing Eastern Time)**.

(2)     <u>Resolution of Cure Objections</u>.  The Debtors and a Counterparty that has filed a Cure Objection shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined by the Court at the Sale Hearing.  The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.  All other objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to, and under a Contract, if it is ultimately designated a Proposed Assumed Contract, will be heard at the Sale Hearing.

(3)     <u>Adjourned Cure Objections</u>. If a timely Cure Objection cannot otherwise be resolved by the parties, such objection shall be heard

at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtors' discretion, after consulting with the Consultation Parties and the applicable Successful Bidder, be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction; provided that, the Debtors maintain a cash reserve equal to the cure amount the objecting Counterparty believes is required to cure the asserted monetary default under the applicable Proposed Assumed Contract. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Proposed Assumed Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Successful Bidder, as of the closing date of the applicable Sale Transaction.

(4)   Failure to File Timely Cure Objection. If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless such Counterparty has timely filed an Adequate Assurance Objection with respect to the Proposed Assumed Contract) to the applicable Successful Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Proposed Assumed Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Proposed Assumed Contract, or any other document, and the Counterparty to the Proposed Assumed Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Proposed Assumed Contract against the Debtors or any Successful Bidder(s), or the property of any of them.

e.   Adequate Assurance Objections.

(1)   Adequate Assurance Objection Deadline. Any Counterparty to a Proposed Assumed Contract that wishes to object to the proposed assumption, assignment, and sale of the Proposed Assumed Contract, the subject of which objection is a Successful Bidder's proposed form of adequate assurance of future performance with respect to such contract (each, an "**Adequate Assurance Objection**") shall file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any

RLF1 15165438V.1

appropriate documentation in support thereof, by no later than **October 27, 2016, at 5:00 p.m. (prevailing Eastern Time)**; provided that, if the Sale Hearing is adjourned to a later date, the Adequate Assurance Objection Deadline shall be at 5:00 p.m. (prevailing Eastern Time) two (2) days prior to the Sale Hearing.

(2)    Resolution of Adequate Assurance Objections.  The Debtors and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance of the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

(3)    Failure to File Timely Adequate Assurance Objection.  If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Proposed Assumed Contract) to the applicable Successful Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The applicable Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.

f.    Reservation of Rights.  The inclusion of a Contract or other document or Cure Costs on the Assumption and Assignment Notice or the Proposed Assumed Contracts Notice (collectively, the "**Contract Notices**") shall not constitute or be deemed a determination or admission by the Debtors, the applicable Successful Bidder(s), or any other party in interest that such contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract or other document listed on the Contract Notices.  The Debtors' inclusion of any Contract on the Contract Notices shall not be a guarantee that such contract ultimately will be assumed or assumed and assigned.  The Contract Notices shall be without prejudice to each Successful Bidder's rights, if any, under the applicable asset purchase agreement, to subsequently exclude Proposed Assumed Contracts from the

assumption or assignment prior to the closing of an applicable Sale Transaction.

**Approval of the Relief Requested Is Warranted
and in the Best Interests of the Debtors and Their Economic Stakeholders**

**A.    The Bidding Procedures**

31.    The Bidding Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate.  *See Burtch et al. v. Ganz, et al. (In re Mushroom Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor had fiduciary duty to maximize and protect value of estate's assets); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that the main goal of any proposed sale of property of a debtor's estate is to maximize value).  Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

32.    The Bidding Procedures provide for an orderly, uniform, and appropriately competitive process through which interested buyers can submit offers to buy all or a material portion of the Debtors' Assets.  The Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote active bidding from seriously interested parties, and to confirm the best or highest offer reasonably available for the Assets.  Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction in a fair and

26

transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a Sale Transaction. Courts in this and other districts routinely approve procedures substantially similar to the proposed Bidding Procedures. *See In re Sports Authority, Inc.*, Case No. 16-10257 (MFW) (Bankr. D. Del. Apr 14, 2016) [D.I. 1186]; *In re Hancock Fabrics, Inc.*, Case No. 16-10296 (BLS) (Bankr. D. Del. Feb. 24, 2016) [D.I. 235]; *In re Haggen Holdings, LLC*, Case No. 15-11874 (KG) (Bankr. D. Del. Dec. 4, 2015) [D.I. 911]; *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr. D. Del. Sept. 3, 2015) [D.I. 14]; *In re Ritz Camera & Image L.L.C.*, Case No. 12-11868 (KG) (Bankr. D. Del. July 30, 2012) [D.I. 288]. Accordingly, the Bidding Procedures should be approved, as they are reasonable, appropriate, and in the best interests of the Debtors, their estates, and all parties in interest.

**B.    The Proposed Sale**

33.    Ample authority exists for approval of the Sale. Section 363 of the Bankruptcy Code provides, in relevant part, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts routinely authorize a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983).

34.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (i) whether a sound business justification exists for the sale;

(ii) whether adequate and reasonable notice of the sale was provided to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) and whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (quoting *Smith v. Van Gorkcom*, 488 A.2d 858, 872 (Del. 1985)).

> **a.**      ***Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale***

35.      A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *see also In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (recognizing that paramount goal of any proposed sale of property of estate is to maximize value).

36.      As set forth above and in the Cejka Declaration, a strong business justification exits for the proposed Sale.  An orderly but expeditious Sale of the Assets is critical to both preserving and realizing Golfsmith's going-concern value and maximizing recovery for the Debtors' economic stakeholders and also is required under the express terms of the DIP Credit Agreement.  The Debtors will need to both order a significant amount of new inventory for their stores in advance of the end-of-year holiday season, and to start to prepare their stores to

execute their holiday season strategy. Approving a Sale of the Debtors' Assets to a going concern before November will allow the Debtors' significant cash needs to be funded by a new owner. In the alternative, approving a Sale of the Debtors' businesses to a buyer focused on liquidating the Debtors' Assets will avoid the Debtors needlessly incurring the cost of acquiring additional inventory to ensure their future viability as a going concern, while allowing a purchaser to benefit from the holiday season to liquidate the purchased inventory.

**b.**    ***The Noticing Procedures Are Reasonable and Appropriate***

37.    The Noticing Procedures described above are reasonably calculated to provide all of the Debtors' known creditors and all other parties in interest with adequate, timely notice of, among other things, the Sale, Bidding Procedures, Auction, and Sale Hearing. The Debtors also are publishing the Publication Notice in the Wall Street Journal or USA Today.

**c.**    ***The Proposed Sale Will Produce a Fair and Reasonable Purchase Price for the Assets***

38.    As set forth above, the Debtors believe that the Sale will produce a fair and reasonable purchase price for the Assets. The Bidding Procedures were carefully designed to ensure that the Auction, if necessary, will yield the maximum value for the Debtors' estates and creditors. The Bidding Procedures allow all parties in interest an opportunity to conduct in-depth diligence. The Bidding Procedures also provide an appropriate framework for the Debtors to review, analyze, and compare all bids received to determine which bids are in the best interests of the Debtors and their economic stakeholders. The Bidding Procedures clearly set forth the participation requirements for Qualified Bidders and bid requirements for Qualified Bids. In addition, the Bidding Procedures are prudently designed to stimulate bidding on as many of the Assets as possible by (i) permitting the Debtors to consider bids for less than all or substantially all, but not less than a material portion of, the Assets and (ii) to accept as a single

Qualified Bid, multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.  The Bidding Procedures also provide for the possibility of a Backup Liquidation, which enables the Debtors to satisfy their fiduciary obligations to obtain the highest or otherwise best value for their estates and their creditors.  Finally, compliance with the Bidding Procedures and the Bidding Procedures Order will provide a basis for the Court to find that no Sale Transaction constitutes a fraudulent transfer because the purchase price represents reasonably equivalent value and is fair and reasonable.

> **d.**     ***The Bidding Procedures Ensure that the Proposed Sale Will Be Consummated in Good Faith***

39.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) fosters the "'policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely.'"  *Reloeb Co. v. LTV Corp* (*In re Chateaugay Corp*., No. 92 Civ. 7054 (PKL), 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. May 10, 1993) (quoting *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 147 3d Cir. 1986).  *See also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

40.     Further, as set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process to allow the Debtors to obtain the highest or otherwise best offer for the Sale of the Assets. Any sale agreement entered into between the Debtors and any Successful Bidder at the Auction will be negotiated at arms'-length and in good faith.  Accordingly, the Debtors seek a finding that each Successful Bidder at the Auction is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

41.     In light of the foregoing, the Debtors have demonstrated that the Sale is a sound exercise of the Debtors' business judgment and should be approved.

**C.     Sale Free and Clear of Liens, Claims, Interests, and Encumbrances**

42.     In the interest of attracting the best offers, the Assets should be sold free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the Sale.  Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

a.     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b.     such entity consents;

c.     such interest is a lien at the price at which such property is to be sold is greater than the value of all liens on such property;

d.     such interest is in bona fide dispute; or

e.     such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

43.     The Debtors submit that the Sale of the Assets free and clear of liens, claims, interests, and encumbrances will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code.  Any lien holder will be adequately protected by having its lien attach to the proceeds of the Sale, subject to any claims and defenses that the Debtors may have with respect thereto.  Accordingly, the Debtors request that the Court authorize the Debtors to sell the Assets free and clear of any liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code.

D.     **Assumption of Executory Contracts and Unexpired Leases**

44.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   11 U.S.C. § 365(a).  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease.  *See, e.g., In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").  The "business judgment" test in this context only requires that a debtor demonstrate that

assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

45.     The assumption of the Proposed Assumed Contracts is an exercise of the Debtors' sound business judgment because the transfer of such contracts will be necessary to the Debtors' obtaining the highest or otherwise best bid for the Assets.   The assumption and assignment of the Proposed Assumed Contracts also will be in accordance with the requirements of section 365 of the Bankruptcy Code.   In connection with the Sale, the Debtors will assume and assign the Proposed Assumed Contracts to the Successful Bidder(s) at the Auction.   The assumption and assignment of the Proposed Assumed Contracts are necessary for a Successful Bidder who intends to operate the businesses as a going concern because they are central to Golfsmith's operations.   Indeed, the Debtors believe the assumption and assignment of the Proposed Assumed Contracts will be conditions to any Qualified Bid (other than a liquidation bid) becoming binding and effective.   Given that consummation of a going-concern transaction for the Sale of substantially all of the Assets is the lynchpin of the Debtors' efforts to maximize value for their estates and creditors, the Debtors' assumption of the Proposed Assumed Contracts is an exercise of the Debtors' sound business judgment and should, therefore, be approved.

        e.        ***The Debtors' Assumption and Assignment of Executory Contracts and Unexpired Leases Will Satisfy the Requirements under Bankruptcy Code Section 365***

46.     Any Sale Transaction consummated by the Debtors will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code.     Section 365(b)(1) requires that any outstanding defaults under the Contracts to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.   The Debtors' assumption and assignment of the Proposed Assumed Contracts will be contingent upon payment or reserve of Cure Costs and effective only upon the applicable

33

Sale closing.  As set forth above, the Debtors propose to file with the Court and serve on each Counterparty an Assumption and Assignment Notice, which will set forth the Debtors' good faith calculations of Cure Costs with respect to each Contract listed on such notice. Additionally, the Debtors propose to file with the Court and serve on each Counterparty to a Proposed Assumed Contract the Notice of Proposed Assumed Contracts.  Counterparties shall have the opportunity to lodge any objections to the proposed assumption and assignment of their respective Proposed Assumed Contracts and, if applicable, the proposed Cure Costs with respect thereto.

47.    Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").  Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote

sufficient funding to business to give it strong likelihood of succeeding; in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

48.    As set forth above and in the Bidding Procedures, the Qualified Bidders are required to provide the Debtors with such financial and other information sufficient to constitute adequate assurance of future performance of the applicable obligations under any Proposed Assumed Contracts included in a Qualified Bid.  The Debtors will provide adequate assurance information to all Counterparties to Proposed Assumed Contracts, and, upon request by such a Counterparty, furnish additional adequate assurance information if reasonable and appropriate under the circumstances. Counterparties will have the opportunity to lodge objections to any Bidder's proposed adequate assurance of future performance.  Based on the foregoing, the Debtors' assumption and assignment of the Proposed Assumed Contracts satisfy the requirements under section 365 of the Bankruptcy Code and should be approved.

49.    In addition, to facilitate the assumption and assignment of the Proposed Assumed Contracts, the Debtors further request that the Court find that all anti-assignment provisions therein, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[4]

---

[4] Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease…"  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee."  11 U.S.C. § 365(f)(3).

## Waiver of Bankruptcy Rules 6004(h) 6006(d)

50.    The Debtors request waivers of the fourteen-day stay requirements under Bankruptcy Rules 6004(h) and 6006(d).  As explained above, the Milestones in the DIP Facility require the Debtors to complete the Sale Process by October 31, 2016.  As such, any delay in closing the Sale could risk the Debtors defaulting under the DIP Facility and potentially even collapsing their restructuring strategy.  Accordingly, the Debtors request that each Sale Order approving a Sale Transaction be effective immediately upon entry of such order and that the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## Notice

51.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) Morgan, Lewis & Bockius LLP, One Federal Street, 32nd Floor, Boston, MA 02110 (Attn: Sandra J. Vrejan, Esq. and Julia Frost-Davies, Esq.), and Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne, Esq.), counsel to Antares Capital LP, as (a) successor in interest to the Agent under the Debtors' prepetition ABL Credit Facility, and (b) DIP Agent under the Debtors' proposed DIP Facility; (iv) The Bank of New York Mellon, 101 Barclay Street, Floor 4 East, New York, NY 10286 (Attn: Global Americas and Tim Burke), as U.S. Co-Trustee and U.S. Collateral Agent under the Senior Secured Note Indenture; (v) BNY Trust Company of Canada, 11th Floor, 320 Bay Street, Toronto, Ontario M5H 4A6 (Attn: Transaction Management Group), and BNY Trust Company of Canada, Suite 520, 1130 West Pender Street, Vancouver, BC V6E 4A4 (Attn: Roberta Massender), as Canadian Co-Trustee and Canadian Collateral Agent under the Senior Secured Note Indenture; (vi) OCPI GT SPV Limited, 100 University Avenue,

Toronto, Ontario M5H 4H2 (Attn: Andrew Prodanyk), as guarantor under the SPV Holdco Guarantee;  (vii) Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario M5H 2S7 (Attn: Robert J. Chadwick and Melaney Wagner), as counsel to Golf Town in the CCAA Proceeding; (viii) FTI Consulting Canada Inc., the Canadian Court-appointed monitor in the CCAA Proceeding (the "**Monitor**"), TD South Tower, 79 Wellington Street West, Toronto Dominion Centre, Suite 2010, P.O. Box 104, Toronto, ON M5K 1G8 (Attn:  Paul Bishop and Jim Robinson); (ix) Olser, Hoskin & Harcourt LLP, 100 King Street West, 1 First Canadian Place, Suite 6200, P.O. Box 50, Toronto, Ontario M5X 1B8 (Attn:  Tracy Sandler and Jeremy Dacks), as counsel for the Monitor; (x) the Securities and Exchange Commission; (xi) the Internal Revenue Service; (xii) the United States Attorney's Office for the District of Delaware; (xiii) all persons and entities known by the Debtors to have expressed an interest to the Debtors in a Sale Transaction involving any of the Assets during the past twelve (12) months; (xiv) all persons and entities known or reasonably believed to have asserted a lien, claim, interest, or encumbrance with respect to any of the Assets; (xv) all Contract Counterparties; and (xvi) any other party entitled to notice pursuant to Bankruptcy Rule 2002.

**No Previous Request**

52.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Bidding Procedures Order, and, after the Sale Hearing, one or more Sale Orders, and such other and further relief as the Court may deem just and proper.

Dated:   September 14, 2016
         Wilmington, Delaware

                                   */s/ Mark D. Collins*_____
                                   RICHARDS, LAYTON & FINGER, P.A.
                                   Mark D. Collins (No. 2981)
                                   John H. Knight (No. 3848)
                                   Zachary I. Shapiro (No. 5103)
                                   Brett M. Haywood (No. 6166)
                                   One Rodney Square
                                   920 North King Street
                                   Wilmington, Delaware 19801
                                   Telephone:  (302) 651-7700
                                   Facsimile:  (302) 651-7701

                                   -and-

                                   WEIL, GOTSHAL & MANGES LLP
                                   Michael F. Walsh (*pro hac vice* admission pending)
                                   David N. Griffiths (*pro hac vice* admission pending)
                                   Charles M. Persons (*pro hac vice* admission pending)
                                   767 Fifth Avenue
                                   New York, New York  10153
                                   Telephone:  (212) 310-8000
                                   Facsimile:  (212) 310-8007

                                   *Proposed Attorneys for the Debtors*
                                   *and Debtors in Possession*

**Exhibit A**

**Bidding Procedures Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------x
:
In re           :    **Chapter 11**
:
**GOLFSMITH INTERNATIONAL**  :    **Case No. 16-_____ (___)**
**HOLDINGS, INC.,** *et al.,*   :
:    **Joint Administration Requested**
    **Debtors.**[1]    :
:
-------------------------------------------------------x

### ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION FOR AND HEARING TO APPROVE SALE OF DEBTORS' ASSETS, (C) APPROVING FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (E) GRANTING RELATED RELIEF

Upon the motion, dated September 14, 2016 (the "**Motion**"),[2] of Golfsmith International Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), for an order pursuant to sections 105(a), 363, and 365 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") (i) authorizing and approving bidding procedures (the "**Bidding Procedures**"), substantially in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Golfsmith International Holdings, Inc. (4847); GMAC Holdings, LLC (3331); Golf Town USA Holdco Limited (5562); Golf Town USA Holdings Inc. (7038); Golf Town USA, LLC (0259); Golfsmith 2 GP, L.L.C. (2218); Golfsmith Europe, L.L.C.(2408); Golfsmith Incentive Services, L.L.C. (2730); Golfsmith International, Inc. (7337); Golfsmith International, L.P. (4257); Golfsmith Licensing, L.L.C. (5499); Golfsmith NU, L.L.C. (2404); and Golfsmith USA, L.L.C. (2405). The Debtors' corporate headquarters is located at 11000 North IH-35, Austin, TX 78753.

[2] All capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the form attached hereto as **Exhibit 1**, in connection with the sale or disposition (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") or any portion thereof; (ii) scheduling an auction of the Assets (the "**Auction**") and a hearing for the approval of the Sale (the "**Sale Hearing**"); (iii) authorizing and approving the form and manner of (a) notice of the Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"); (b) publication notice of the Auction and Sale Hearing in the Wall Street Journal or USA Today (the "**Publication Notice**"); (c) notice to each non-Debtor counterparty (each, a "**Counterparty**") to an executory contract and unexpired lease of the Debtors (collectively, the "**Contracts**") of the Debtors' calculation of the amount necessary to cure all monetary defaults under such Contracts (the "**Cure Costs**"), substantially in the form attached hereto as **Exhibit 3** (the "**Assumption and Assignment Notice**"); (d) manner of notice of proposed assumption and assignment of certain Contracts (collectively, the "**Proposed Assumed Contracts**") in connection with a particular sale transaction (each, a "**Sale Transaction**") (the "**Proposed Assumed Contracts Notice**"); (iv) authorizing and approving procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of Contracts; and (v) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Cejka Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that

no other or further notice need be provided; and the Sale Hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and the Debtors having demonstrated good, sufficient, and sound business purposes and justification for the relief approved herein, and the Debtors having represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Successful Bidder(s) will be authorized to distribute e-mails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the proceeds of the Sale.

B.     The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

C.     The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code.

D.     The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Sale Notice, (iii) the Publication Notice, (iv) the Assumption and Assignment Notice, (v) the Proposed Assumed Contracts Notice, and the (vi) Assumption and Assignment Procedures.

3

E.      The Bidding Procedures were negotiated in good faith and at arms' length, and are reasonably designed to promote participation and active bidding and to ensure that the highest or otherwise best value is generated for the Assets.

F.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief requested in the Motion has been afforded to parties in interest.

G.      The Sale Notice, Publication Notice, Assumption and Assignment Notice, and Proposed Assumed Contracts Notice all are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, Sale Hearing, Bidding Procedures, Assumption and Assignment Procedures, the Debtors' proposed Cure Costs, Proposed Assumed Contracts, and all relevant important dates and deadlines with respect to the foregoing, and no other or further notice of the Sale or the assumption and assignment of Contracts in connection therewith shall be required.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted as provided herein, and solely to the extent consistent with the terms of the DIP Orders, Approved Budget, and DIP Documents.

2.      All objections to the relief granted herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits with prejudice.

4

3.	The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the Sale and the Auction.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

## The Bidding Procedures

4.	The deadline for submitting Qualified Bids (the "**Bid Deadline**") is **October 17, 2016 at 5:00 p.m. (prevailing Eastern Time)**; provided that, the Debtors shall have the right, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment.  The Debtors shall promptly provide copies of all bids to each of the Consultation Parties, in accordance with Bidding Procedures.

5.	If the Debtors receive at least one Qualified Bid by the Bid Deadline, the Debtors shall conduct the Auction.  The Auction will take place at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **October 19, 2016 at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location as the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, may determine in their reasonable business judgment.   The Consultation Parties and their respective representatives and/or professional advisors shall be allowed to attend the Auction.

6.	Each Qualified Bidder participating in the Auction shall confirm in writing that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction, and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the applicable Assets if selected as a Successful Bidder.

7.	All proceedings of the Auction shall be conducted openly and shall be transcribed or videotaped, at the Debtors' option.

8.    Subject to the Bidding Procedures and this Order, the Debtors shall have the right, after consulting with the Consultation Parties, in their reasonable business judgment, to (i) determine which bidders qualify as "Qualified Bidders;" (ii) determine which bids qualify as "Qualified Bids;" (iii) determine which Qualified Bids qualify as Baseline Bids; (iv) determine the amount of each Minimum Overbid; (v) determine which Qualified Bids are the Successful Bids and the Backup Bids; (vi) reject any bid that is (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bidding Procedures, Bankruptcy Code, this Order, or any other order of this Court; or (c) contrary to the best interests of the Debtors and their estates; (vii) adjourn or cancel the Auction after providing notice of such adjournment or cancellation in accordance with the Bidding Procedures; (viii) adjourn the Sale Hearing after providing notice of such adjournment in accordance with the Bidding Procedures; and (ix) modify the Bidding Procedures in a manner consistent with their fiduciary duties and applicable law.

### The Sale Hearing and Sale Objections

9.    The Sale Hearing shall be heard before this Court **on October 28, 2016 2016 at __:__ _.m.**  The Debtors may, after consulting with the Consultation Parties, seek an adjournment or rescheduling of the Sale Hearing, as the Debtors deem appropriate in their reasonable business judgment.

10.    Objections to a Sale Transaction  (each, a "**Sale Objection**"), including any objection to the Sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of any Sale Order (other than Adequate Assurance Objections (as hereinafter defined)) must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (iii) be filed with the Court and served on the Objection Recipients by

6

**October 21, 2016, at 5:00 p.m. (prevailing Eastern Time).** All Sale Objections not otherwise resolved by the parties prior thereto shall be heard at the Sale Hearing.

11.    The failure of any party to timely file with the Court and serve on the Objection Recipients a Sale Objection forever shall be barred from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the applicable Sale Transaction(s) contemplated by an applicable asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.    Notwithstanding the foregoing or anything herein to the contrary, and as set forth below, the deadline to file an Adequate Assurance Objection in connection with a proposed Sale Transaction shall be one (1) day prior to the applicable Sale Hearing.

<u>**The Noticing Procedures**</u>

12.    The Sale Notice substantially in the form attached hereto as **Exhibit 2** and the Publication Notice, which shall contain the same content as the Sale Notice, respectively are approved and no other or further notice shall be required if the Debtors serve and publish such notices in the manner provided in the Bidding Procedures and this Order.    The form of Sale Notice and Publication Notice contain the type of information required under Bankruptcy Rule 2002 and Local Rule 2002-1, and comply in all respects with other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

13.    Within two (2) days after entry of this Order, the Debtors shall cause the Sale Notice to be filed with this Court, served by email, mail, facsimile, or overnight delivery on the Sale Notice Parties (as defined in the Bidding Procedures), and published on the website

maintained by the Debtors' claims and noticing agent and administrative advisor, Prime Clerk, located at http://cases.primeclerk.com/Golfsmith (the "**Prime Clerk Website**").

14.    Within five (5) days after entry of this Order, the Debtors shall cause the Publication Notice to be published once in the Wall Street Journal or USA Today.

15.    Within one (2) days after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website the results of the Auction, include (i) a copy of the Successful Bid(s) and Backup Bid(s); (ii) the identity of any Successful Bidder(s) and Backup Bidder(s); (iii) a list of Proposed Assumed Contracts; and (iv) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to any applicable Proposed Assumed Contracts.

## Assumption and Assignment Procedures

16.    The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, and the Proposed Assumed Contracts Notice, which shall provide adequate and sufficient notice to any applicable Counterparty of any proposed assumption and/or assignment of any Proposed Assumed Contract, in accordance with the Assumption and Assignment Procedures, are reasonable, fair, and appropriate, and contain the type of information required under Bankruptcy Rule 2002, Local Rule 2002-1, and comply in all respects with all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice of the Debtors' proposed Cure Costs or the assumption and assignment of the Proposed Assumed Contracts shall be required if the Debtors file and serve such notices as provided in the Motion and in this Order.

17.      Within two (2) days after entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty, and cause to be published on the Prime Clerk Website the Assumption and Assignment Notice.

18.      Within two (2) days after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties, including each applicable Counterparty, and cause to be published on the Prime Clerk Website, the Notice of Proposed Assumed Contracts.

19.      Any objection to the assumption and assignment of a Proposed Assumed Contract, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding monetary defaults under such contract (each, a "**Cure Objection**"), must be filed with the Court and served on the Objection Recipients by **October 21, 2016, at 5:00 p.m. (prevailing Eastern Time).**  A Cure Objection shall state, with specificity, the legal and factual bases thereof and include with such objection any appropriate documentation in support thereof.

20.      The Debtors and any Counterparty that timely files a Cure Objection to the assumption and assignment of a Contract that ultimately is designated as a "Proposed Assumed Contract" shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If the Debtors and the applicable Counterparty are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined by the Court at the Sale Hearing.

21.      If a timely Cure Objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtors' discretion, after consulting with the Consultation Parties and the applicable Successful Bidder, be adjourned (an "**Adjourned Cure Objection**") to a

9

subsequent hearing.  An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction; provided that, the Debtors maintain a cash reserve equal to the cure amount the objecting Counterparty believes is required to cure the asserted monetary default under the applicable Proposed Assumed Contract.  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Proposed Assumed Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Successful Bidder, as of the closing date of the applicable Sale Transaction.

22.    If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless such Counterparty has timely filed an Adequate Assurance Objection with respect to the Proposed Assumed Contract) to the applicable Successful Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale.  The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding monetary defaults under the Proposed Assumed Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Proposed Assumed Contract, or any other document, and the Counterparty to the Proposed Assumed Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Proposed Assumed Contract against the Debtors or the Successful Bidders, or the property of any of them.

23.    Any objection to the assumption and assignment of a Proposed Assumed Contract, the subject of which objection is a Successful Bidder's proposed form of adequate

assurance of future performance under such contract (each, an "**Adequate Assurance Objection**"), must be filed with the Court and served on the Objection Recipients by **October 27, 2016 at 5:00 p.m. (prevailing Eastern Time)**.  An Adequate Assurance Objection shall state, with specificity, the legal and factual bases thereof and include with such objection any appropriate documentation in support thereof.

24.     The Debtors and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance of the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

25.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Proposed Assumed Contract) to the applicable Successful Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The applicable Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.

26.     The Debtors' assumption and assignment of the Proposed Assumed Contracts to a Successful Bidder is subject to Court approval and the consummation of an

applicable Sale Transaction.  Accordingly, absent the closing of an applicable Sale Transaction, the Proposed Assumed Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

27.    The inclusion of a Contract or other document or Cure Costs on the Assumption and Assignment Notice or the Proposed Assumed Contracts Notice (collectively, the "**Contract Notices**") shall not constitute or be deemed a determination or admission by the Debtors, the applicable Successful Bidder(s), or any other party in interest that such contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract or other document listed on the Contract Notices.

28.    The Debtors' inclusion of any Contract on any of the Contract Notices shall not be a guarantee that such contract ultimately will be assumed or assumed and assigned. The Contract Notices shall be without prejudice to each Successful Bidder's rights, if any, under the applicable asset purchase agreement, to subsequently exclude Proposed Assumed Contracts from the assumption or assignment prior to the closing of an applicable Sale Transaction.

### Related Relief

29.    All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and any Sale Transaction.

30.    Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating

RLF1 15165438V.1

the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

31.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order, but solely to the extent consistent with the terms of the DIP Orders, Approved Budget, and DIP Documents.

32.     Any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the terms of the DIP Orders, Approved Budget, and DIP Documents.  In the event of any inconsistency between the terms or conditions of this Order and the terms or conditions of the DIP Orders, the terms and conditions of the DIP Orders shall govern and control.

33.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____, 2016
          Wilmington, Delaware

                                   _____
                                   UNITED STATES BANKRUPTCY JUDGE

13

**Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
                                                      :
In re                                                 :        **Chapter 11**
                                                      :
**GOLFSMITH INTERNATIONAL**                           :        **Case No. 16-_____ (___)**
**HOLDINGS, INC.,** *et al.,*                         :
                                                      :        **Joint Administration Requested**
         **Debtors.**[1]                              :
                                                      :        **Hearing Date:  TBD**
                                                      :        **Objection Deadline:  TBD**
------------------------------------------------------x


## BIDDING PROCEDURES

         Set forth below are the bidding procedures (the "**Bidding Procedures**") that will be employed in connection with a sale or disposition (the "**Sale**") of substantially all of the assets or any part thereof of Golfsmith International Holdings, Inc. and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Golfsmith**").

         By the motion (the "**Motion**") dated September 14, 2016, the Debtors sought, among other things, approval of the Bidding Procedures for soliciting bids for, conducting an auction (the "**Auction**") of, and consummating a Sale of substantially all of the Debtors' assets, in each case, as one or more going-concern transactions or liquidation transactions (each, a "**Sale Transaction**").

         On October 4, 2016, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), entered the *Order (I)(A) Approving Bidding Procedures For The Sale of Substantially All of Debtors' Assets, (B) Scheduling an Auction For And Hearing to Approve Sale of Debtors' Assets, (C) Approving Form and Manner of Notice of Sale, Auction, And Sale Hearing, (D) Approving Assumption And Assignment Procedures, And (E) Granting Related Relief* [D.I. [__]] (the "**Bidding Procedures Order**"). Pursuant to the Bidding Procedures Order, the Debtors are authorized to employ the Bidding Procedures in connection with the Sale, and are empowered to take all actions necessary or appropriate to implement the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Golfsmith International Holdings, Inc. (4847); GMAC Holdings, LLC (3331); Golf Town USA Holdco Limited (5562); Golf Town USA Holdings Inc. (7038); Golf Town USA, LLC (0259); Golfsmith 2 GP, L.L.C. (2218); Golfsmith Europe, L.L.C.(2408); Golfsmith Incentive Services, L.L.C. (2730); Golfsmith International, Inc. (7337); Golfsmith International, L.P. (4257); Golfsmith Licensing, L.L.C. (5499); Golfsmith NU, L.L.C. (2404); and Golfsmith USA, L.L.C. (2405). The Debtors' corporate headquarters is located at 11000 North IH-35, Austin, TX 78753.

**Noticing**

## A.    Consultation Parties

Throughout the sale process, as necessary or appropriate, the Debtors will consult with the following parties: (i) (a) Weil, Gotshal & Manges LLP and (b) Richards Layton & Finger, P.A., each as Debtors' counsel; (ii) Jefferies, LLC, the Debtors' investment banker; (iii) Alvarez & Marsal North America, LLC, the Debtors' financial advisor; (iv) Goodmans LLP, counsel to the Debtors' non-Debtor Canadian affiliates (collectively, "**Golf Town**") in a proceeding commenced under the Companies' Creditors Arrangement Act in Canada; (v) Morgan, Lewis & Bockius LLP, as counsel to Antares Capital LP ("**Antares**"), as (a) successor in interest to the Agent (in such capacity, the "**ABL Agent**") under that certain Credit Agreement dated July 24, 2012 (as amended, supplemented, or otherwise modified from time to time), among certain of the Debtors, certain of the Golf Town entities, each of the guarantors named therein, Antares, and the lenders and party thereto, and (b) the DIP Agent under to the Debtors' proposed debtor in possession financing facility; (vi) The Bank of New York Mellon, as U.S. Co-Trustee and U.S. Collateral Agent, under that certain Indenture (the "**Senior Secured Notes Indenture**") among Golf Town Canada Inc. and Golfsmith International Holdings Inc., each of the guarantors named therein, and BNY Trust Company of Canada and The Bank of New York Mellon (together, the "**Indenture Trustees**"); (vii) BNY Trust Company of Canada, as Canadian Co-Trustee and Canadian Collateral Agent under the Senior Secured Notes Indenture; and (viii) counsel for any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the foregoing entities in clauses (i) through (viii), the "**Consultation Parties**").

## B.    Bid Notice Parties

Qualified Bids (as hereinafter defined) must be submitted in writing to (i) the Debtors, Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (ii) the attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); and (iii) the Debtors' investment banker, Jefferies LLC, 520 Madison Avenue, New York, New York 10022 (Attn: Robert J. White) (the foregoing entities in clauses (i) through (iii), the "**Bid Notice Parties**").

The Debtors shall promptly provide copies of all bids received to the Consultation Parties; provided that the Debtors shall not be required to provide to any Consultation Party any material, nonpublic information regarding bids for the Assets (as hereinafter defined) if such Consultation Party submits a bid to purchase all or any portion of the Assets. Further, the Debtors shall not be required to consult with any Consultation Party pursuant to the terms of these Bidding Procedures if such party is an active bidder at the applicable time.

## C.    Sale Notice and Sale Notice Parties

1.    Sale Notice Parties. The "**Sale Notice Parties**" shall include the following: (i) the Consultation Parties (as applicable); (ii) all persons and

2

entities known by the Debtors to have expressed an interest to the Debtors in a Sale Transaction involving any of the Assets during the past twelve (12) months, including any person or entity that has submitted a bid for any of the Assets, as applicable; (iii) all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors); (iv) all non-Debtor parties to any executory contracts or unexpired leases of the Debtors (collectively, the "**Contracts**") that could be assumed or rejected in connection with a Sale Transaction; (v) any governmental authority known to have a claim against the Debtors in these chapter 11 cases; (vi) the United States Attorney General; (vii) the Antitrust Division of the United States Department of Justice; (viii) the United States Attorney for the District of Delaware; (ix) the Office of the Attorney General in each state in which the Debtors operate; (x) the Federal Trade Commission; (xi) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (xii) all other persons and entities as directed by the Bankruptcy Court.

2.    <u>Sale Notice</u>.    Within two (2) days after entry of the Bidding Procedures Order, the Debtors shall file with the Court, serve on the Sale Notice Parties (as hereinafter defined), and cause to be published on the website maintained by the Debtors' claims and noticing agent and administrative advisor, Prime Clerk, LLC, located at http://cases.primeclerk.com/Golfsmith (the "**Prime Clerk Website**") a notice (the "**Sale Notice**") setting forth (i) the date, time, and place of the (a) Auction and (b) Sale Hearing; and (ii) the deadline to object to the Sale and the relief requested in the Motion (the "**Sale Objection Deadline**").

3.    <u>Publication Notice</u>.    Within five (5) days after entry of the Bidding Procedures Order, the Debtors shall cause the information contained in the Sale Notice to be published once in the Wall Street Journal or USA Today.

### D.    <u>Sale Objections</u>

Sale Objections (as hereinafter defined) shall be filed in accordance with these Bidding Procedures be served on (i) the Debtors, Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (ii) the attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); (iii) the attorneys for any official committee of unsecured creditors appointed in these chapter 11 cases; (iv) the attorneys for the DIP Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, 32nd Floor, Boston, MA 02110 (Attn: Sandra J. Vrejan, Esq. and Julia Frost-Davies, Esq.); and (b) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne, Esq.); (v) the attorneys (if applicable) of

3

any applicable Successful Bidder(s); (vi) the attorneys (if applicable) of any applicable Backup Bidder(s); and (vii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.) (the foregoing entities in clauses (i) through (vii), the "**Objection Recipients**").

**E.**     **Assumption and Assignment**

The Debtors shall provide all notices regarding the proposed assumption, assignment, and rejection of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Motion and Bidding Procedures Order.

<b>Description of the Assets</b>

The Debtors are seeking to sell all or substantially all of their businesses as a going concern or through a liquidation, including, but not limited to, the Debtors' owned real property, unexpired leases, executory contracts, cash, and certain equipment, inventory, supplies, intellectual property, insurance proceeds, receivables, prepaid expenses and deposits, and books and records, but excluding causes of action arising under chapter 5 of the Bankruptcy Code, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "**Assets**").

<b>Bidder Qualifications</b>

Each person or entity that desires to participate in the Auction (each, a "**Prospective Bidder**") must be determined by the Debtors to satisfy the following eligibility requirements:

**A.**     **Preliminary Due Diligence**

To be eligible to participate in the Auction, a Prospective Bidder must first execute a confidentiality agreement, in form and substance satisfactory to the Debtors.  Upon execution of a valid confidentiality agreement, any Prospective Bidder  identified by the Debtors as reasonably likely to be a Qualified Bidder (as hereinafter defined) that wishes to conduct  due diligence on the Assets may be granted access to all material information regarding the Assets; provided that, if any Prospective Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Prospective Bidder any trade secrets or proprietary information unless the confidentiality agreement executed by such Prospective Bidder contains appropriate provisions to ensure that such trade secrets or proprietary information will not be used for an improper purpose or to gain an unfair competitive advantage. If the Debtors determine that a Prospective Bidder does not qualify as a Qualified Bidder, such Prospective Bidder shall not be entitled to receive due diligence access or additional non-public information.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders.  All due diligence requests shall be directed to (i) the Debtors, Golfsmith International Holdings, Inc. 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka (Bcejka@alvarezandmarsal.com)), and (ii) the Debtors' investment banker, Jefferies LLC, 520 Madison Avenue, New York, New York 10022 (Attn: Robert J. White (rwhite@jefferies.com)). If the Debtors determine that a Prospective Bidder does

4

not qualify as a Qualified Bidder, such Prospective Bidder shall not be entitled to receive due diligence access or additional non-public information.

**B.**    **Bid Deadline**

Any Prospective Bidder that intends to participate in the Auction must submit a Qualified Bid (as hereinafter defined) on or before **October 17, 2016 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") in writing to the Bid Notice Parties.

The Debtors may, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties, extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment.

**C.**    **Qualified Bid Requirements.**

To qualify as a "**Qualified Bid**," the bid must be in writing and the Debtors must determine that the bid satisfies the following requirements:

1.    Purchased Assets.  A Qualified Bid must identify the following:

a.    the Assets or the portion thereof to be purchased, including any Contracts of the Debtors that would be assumed and assigned in connection with the relevant Sale Transaction (all such Contracts, the "**Proposed Assumed Contracts**");

b.    the liabilities, if any, to be assumed, including any debt to be assumed;

c.    the Credit Bid, if applicable, and/or the cash purchase price of the bid, and

d.    the proposed form of adequate assurance of future performance with respect to any Proposed Assumed Contracts; and

e.    whether Prospective Bidder intends is to operate the Debtors' business as a going concern, or to liquidate the business.

2.    Identification of Bidder.  A Qualified Bid must fully disclose the legal identity of each person or entity bidding for the applicable Assets or otherwise participating in the Auction in connection with such bid, and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtors, any other known Prospective Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

3.    Modified Agreement.  A Qualified Bid must constitute an irrevocable offer in the form of a "**Modified Asset Purchase Agreement**," including all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtors), and a

5

marked copy of the appropriate form asset purchase agreement provided to Prospective Bidders eligible to participate in the Auction (each such agreement either a "**Sale Asset Purchase Agreement**" or a "**Liquidation Asset Purchase Agreement**," as applicable) reflecting the differences between the form asset purchase agreement and the applicable Prospective Bidder's Modified Asset Purchase Agreement.

4.    <u>Credit Bidding</u>. In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code; <u>provided</u> <u>that</u> the Credit Bid complies with the terms of that certain Intercreditor Agreement (the "**Intercreditor Agreement**") dated July 24, 2012, by and among the ABL Agent, the Indenture Trustees, and the Credit Parties (as defined in the Intercreditor Agreement). A Credit Bid may only be applied to reduce the cash consideration with respect to the Assets in which the party submitting the Credit Bid holds a security interest. Each person or entity holding a valid, perfected security interest in Assets for which it submits a bid shall be deemed a Qualified Bidder with respect to its right to acquire such Assets by Credit Bid.

5.    <u>Financial Information</u>. A Qualifying Bid must include the following:

    a.    a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction(s) contemplated by the Modified Asset Purchase Agreement;

    b.    unless the bid includes a Credit Bid pursuant to section 363(k) of the Bankruptcy Code and consistent with the terms of these Bidding Procedures, a statement that the bid is based on an all-cash offer;

    c.    if the bid includes a Credit Bid pursuant to section 363(k) of the Bankruptcy Code, (i) a statement that the bid complies with the terms the Intercreditor Agreement, and (ii) a statement that any remaining balance of the bid after reducing the applicable purchase price of the Assets by the amount of the proposed Credit Bid is based on an all-cash offer; and

    d.    satisfactory evidence of committed financing or other financial ability to consummate the proposed Sale Transaction(s) in a timely manner.

6.    <u>Good Faith Deposit</u>. Each Qualified Bid (other than one that includes a Credit Bid) must be accompanied by a good faith deposit (the "**Good Faith Deposit**") in the form of cash (or other form acceptable to the

Debtors in their sole and absolute discretion) in an amount equal to ten percent (10%) of the purchase price offered to purchase the Assets. All Good Faith Deposits shall be held in escrow in a non-interest bearing account identified by the Debtors until no later than ten (10) days after the conclusion of the Auction unless such bidder is selected as the Successful Bidder or as a Backup Bidder (as hereinafter defined), and thereafter returned to the respective bidders in accordance with the Bidding Procedures.

7.    <u>Representations and Warranties</u>. A Qualified Bid must include the following representations and warranties:

    a.    expressly state that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the Assets prior to submitting its bid; and

    b.    a statement that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Prospective Bidder's Modified Asset Purchase, ultimately accepted and executed by the Debtors;

8.    <u>Authorization</u>. A Qualified Bid must include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a bid, participation in the Auction, and closing of the proposed Sale Transaction(s) in accordance with the terms of the bid and these Bidding Procedures.

9.    <u>Other Requirements</u>. A Qualified Bid shall:

    a.    state that the bid is formal, binding, and unconditional (except as set forth in the Prospective Bidder's Modified Asset Purchase Agreement, if ultimately accepted and executed by the Debtors), is not subject to any further due diligence, and is irrevocable until the earlier of (i) for a Sale, (x) December 31, 2016 and (y) the first business day following the closing of a Sale Transaction for the applicable Assets; or (ii) for a Backup Liquidation, (x) November 31, 2016 and (y) the first business day following the closing of a Sale Transaction for the applicable Assets;

7

b.  expressly state that the Prospective Bidder is committed to executing an asset purchase agreement and all other relevant definitive documentation for the proposed Sale Transaction(s) by no later than October 30, 2016, and closing the proposed Sale Transaction(s) contemplated by the bid by no later than October 31, 2016;

c.  subject to the Debtors' right to enter into a Stalking Horse Agreement that provides for Stalking Horse Bid Protections (each as defined in the Motion), expressly state and acknowledge that no Prospective Bidder shall be entitled to a break-up fee, termination fee, expense reimbursement, or similar type of "bid protection" in connection with the submission of a bid;

d.  expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for the Assets and/or participating in the Auction;

e.  not contain any financing contingencies of any kind;

f.  not contain any condition to closing of the proposed Sale Transaction(s) on the receipt of any third party approvals (excluding Bankruptcy Court approval and any applicable required governmental and/or regulatory approval);

g.  state that all necessary filings under applicable regulatory, antitrust, and other laws will be made (pursuant to the terms of the Modified Asset Purchase Agreement) and that payment of the fees associated therewith shall be made by the Prospective Bidder;

h.  expressly state that the Prospective Bidder agrees to serve as a backup bidder (a "**Backup Bidder**") if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the applicable Assets;

i.  be accompanied by any reasonable information requested by a consumer privacy ombudsman, should one be appointed in the Debtors' chapter 11 cases pursuant to section 363(b)(1)(B) of the Bankruptcy Code;

j.  include contact information for the specific person(s) the Debtors should contact in the event they have any questions about the Prospective Bidder's bid; and

k.  be received by the Bid Notice Parties by the Bid Deadline.

8

D.    **Qualified Bidders**

A bid received for all or any portion of the Assets that is determined by the Debtors to meet the requirements set forth in Section C above will be considered a "**Qualified Bid**," and any bidder that submits a Qualified Bid will be considered a "**Qualified Bidder**." Antares, both in its capacity as DIP Agent and as ABL Agent, and its respective designees, affiliates, and assigns automatically shall be deemed Qualified Bidders, and their respective bids automatically shall be deemed to constitute Qualified Bids, regardless of whether their respective Credit Bids meet the requirements set forth in Section C above.  Antares shall not be required to submit a Good Faith Deposit in connection with any Credit Bid.

The Debtors will value a Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation, (i) the amount of the purchase price and Credit Bid, as applicable, set forth in the Qualified Bid; (ii) the risks and timing associated with consummating a Sale Transaction(s) with the Qualified Bidder; and (iii) any Assets included in or excluded from the Qualified Bid, including any Proposed Assumed Contracts.  In addition, the Debtors will consider bids for less than all or substantially all, but not less than a material portion of, the Assets. The Debtors, may, after consulting with the Consultation Parties, accept as a single Qualified Bid, multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.  The Debtors may permit otherwise Qualified Bidders who submitted bids by the Bid Deadline for less than a substantial (but nevertheless a material) portion of the Assets but who were not identified as a component of a single Qualified Bid consisting of such multiple bids, to participate in the Auction and to submit higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids for non-overlapping material portions of the Assets, as part of such a single Qualified Bid for overbid purposes.

The Debtors shall make a determination regarding which bids qualify as a Qualified Bids and as Baseline Bids (as hereinafter defined) and shall notify bidders whether they have been selected as Qualified Bidders by no later than **October 18, 2016 at 5:00 p.m. (prevailing Eastern Time)**; provided that, if the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Parties, determine to extend the Bid Deadline, the Debtors shall be required to notify bidders whether their bids have qualified as Qualified Bids by no later than two (2) days after the newly-scheduled Bid Deadline.

The Debtors may, after consulting with the Consultation Parties, amend the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment.

E.    **Bid Protections**

No party submitting a bid, whether or not such bid is determined by the Debtors to qualify as a Qualified Bid, shall be entitled to a break-up fee or expense reimbursement, or any other bid protection, unless such break-up fee, expense reimbursement, or other bid protection is approved by the Bankruptcy Court.

9

## The Auction

If the Debtors receive at least one timely Qualified Bid with an acceptable purchase price by the Bid Deadline, the Debtors shall conduct the Auction.  The Auction, if required, will be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **October 19, 2016 at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties.  The Debtors shall have the right to conduct any number of Auctions on the Auction Date to accommodate multiple bids that comprise a single Qualified Bid, if the Debtors determine, in their reasonable business judgment that conducting such auctions would be in the best interests of the Debtors' estates.

A.      **Participants and Attendees**

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures.  Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. The Auction will be conducted openly and all creditors may be permitted to attend; provided that the Debtors may, in their sole and exclusive discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.  Each of the Consultation Parties shall be entitled to have a reasonable number of representatives and/or professional advisors attend the Auction.

Each Qualified bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction, and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

B.      **Auction Procedures**

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment:

    1.      Baseline Bids.  Bidding shall commence at the amount of the Qualified Bid or combination of Qualified Bids that the Debtors, in consultation with the Consultation Parties, determine in their business judgment to be the highest and/or best Qualified Bid (the "**Baseline Bid**").

    2.      Minimum Overbid.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid for the relevant Assets.  The Debtors shall, after consulting with the Consultation Parties, announce the minimum required increments for successive Qualified Bids (each such bid, a "**Minimum Overbid**"), which will be announced at the outset of the Auction.  The Debtors may, in their

reasonable business judgment, and after consulting with the Consultation Parties, announce increases or reductions to Minimum Overbids at any time during the Auction.

3.  Highest or Best Offer.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the relevant Assets (the "**Leading Bid**").  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

The Auction may include open bidding in the presence of all other Qualified Bidders.  All Qualified Bidders shall have the right to submit additional bids and make modifications to the form asset purchase agreement or their Modified Asset Purchase Agreement, at the Auction to improve their bids. The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtors shall have the right, after consulting with the Consultation Parties, to determine, in their reasonable business judgment, which bid is the highest or otherwise best bid and reject at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, including, the DIP Orders, or the best interests of the Debtors and their estates.

4.  Modification of Procedures.  The Debtors may, after consulting with the Consulting Parties, announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify these Bidding Procedures.

**B.    Auction Results**

1.  Successful Bids.  Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid constitutes the highest or otherwise best bid(s) for the applicable Assets (each such bid, a "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction for the applicable Assets of the identity of the bidder that submitted the Successful Bid (each such bidder, the "**Successful Bidder**") and the amount of the purchase price and other material terms of the Successful Bid.

2.  Backup Bids. Immediately prior to the conclusion of the Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine,

consistent with these Bidding Procedures, which Qualified Bid is the next highest or otherwise best Qualified Bid for the relevant Assets after the Successful Bid (each such Qualified Bid, a "**Backup Bid**"); and (ii) notify all Qualified Bidders at the Auction for the applicable Asset of the identity of the Backup Bidder and the amount of the purchase price and other material terms of the Backup Bid.

Backup Bids shall be open and irrevocable until the earlier of: (i) for a Sale, (a) December 31, 2016 and (b) the first business day following the closing of a Sale Transaction with the Successful Bidder for the applicable Assets; or (ii) for a Backup Liquidation, (a) November 31, 2016 and (b) the first business day following the closing of a Sale Transaction with the Successful Bidder for the applicable Assets. If the Successful Bidder for the applicable Assets fails to consummate a Sale Transaction, the Backup Bidder shall be deemed the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate a Sale Transaction for the applicable Assets with the Backup Bidder.

3. <u>No Late Bids</u>. Unless the Bankruptcy Court orders otherwise upon application of the Debtors, the Debtors shall not consider any bids submitted after the conclusion of the Auction and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

On or before **October 21, 2016 at 5:00 p.m. (prevailing Eastern Time)**, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website the results of the Auction, which shall include (i) a copy if the Successful Bid(s) and Backup Bid(s); (ii) the identities of the Successful Bidder(s) and Backup Bidder(s); (iii) the Notice of the Proposed Assumed Contracts; and (iv) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts; <u>provided</u> <u>that</u>, if the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties determine to hold the Auction at a later date, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Prime Clerk Website, the results of the Auction no later than two (2) days after the conclusion of the Auction.

## D.    **Return of Good Faith Deposit**

The Good Faith Deposit of all Prospective Bidders shall be held in escrow by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposits of all Prospective Bidders shall be retained by the Debtors notwithstanding Bankruptcy Court approval of Sale Transactions for the applicable Assets until no later than ten (10) days after the conclusion of the Auction, except for the Good Faith Deposits of Successful Bidders and Backup Bidders. The Debtors shall retain the Good Faith Deposits of Backup Bidders until no later than three (3) business days after the closing of a Sale Transaction with the Successful Bidder for the applicable Assets.

12

At the closing of a Sale Transaction, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.  If a Successful Bidder fails to consummate a Sale Transaction because of a breach or failure to perform on the part of such bidder, then, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of the Successful Bidder as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

## **Sale Hearing**

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Bankruptcy Court.  The hearing to approve the Sale and any Successful Bid(s) in respect of the Assets shall take place on **October 28, 2016** (the "**Sale Hearing**") before the Honorable _____, United States Bankruptcy Judge, in the Bankruptcy Court, located at 824 N. Market St, Wilmington, DE 19801.

At the Sale Hearing, the Debtors will seek entry of order(s) (each, a "**Sale Order**") approving, among other things, the Sale of the relevant Assets to the Successful Bidder(s).  The Sale Hearing may be adjourned or rescheduled upon providing sufficient notice to the Sale Notice Parties.

Objections to a Sale Transaction, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, any of the relief requested in the Sale Motion (each, a "**Sale Objection**"), and entry of any Sale Order (other than an Adequate Assurance Objection (as defined in the Bidding Procedures Order) must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Bankruptcy Court; (iii) be filed with the Bankruptcy Court and served on the Objection Recipients by **October 21, 2016 at 5:00 p.m. (prevailing Eastern Time).**

All Sale Objections not otherwise resolved by the parties prior thereto shall be heard at the Sale Hearing. The failure of any party to timely file with the Court and serve on the Objection Recipients a Sale Objection forever shall be barred from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the applicable Sale Transaction(s) contemplated by an applicable asset purchase agreement with a Successful Bidder, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.  Notwithstanding the foregoing or anything herein to the contrary, and as set forth below, the deadline to file an Adequate Assurance Objection in connection with a proposed Sale Transaction shall be one (1) day prior to the applicable Sale Hearing.

The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted the terms of a Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to a Sale Order.

RLF1 15165438V.1

**Key Dates and Deadlines**

| | |
|---|---|
| **October 4, 2016** | Hearing on Bidding Procedures Motion and entry of Bidding Procedures Order |
| **October 17, 2016, at 5:00 p.m.** | Bid Deadline |
| **October 18, 2016, at 5:00 p.m.** | Deadline for Debtors to notify bidders of their status as Qualified Bidders |
| **October 19, 2016, at 10:00 a.m.** | Auction, to be held at offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 |
| **October 21, 2016, at 5:00 p.m.** | Deadline to file Sale Objections and Cure Objections |
| **October 21, 2016, at 5:00 p.m.** | Deadline to publish results of the Auction, including (i) a copy of the Successful Bid(s) and Backup Bid(s); (ii) the identity of any Successful Bidder(s) and Backup Bidder(s); (iii) a list of Proposed Assumed Contracts; and (iv) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance |
| **October 27, 2016, at 5:00 p.m.** | Deadline to file Adequate Assurance Objections |
| **October 28, 2016** | Hearing to approve proposed Sale Transaction(s) |
| **October 30, 2016** | Deadline to execute all purchase agreements and other relevant definitive documentation in connection with the Sale or Backup Liquidation |
| **October 31, 2016** | Deadline to close the Sale Transaction(s) |

**Reservation of Rights**

The Debtors reserve the right to, in their reasonable business judgment, and in consultation with the Consultation Parties, modify these Bidding Procedures at any time, including, without limitation, to extend deadlines and proposed dates set forth herein, modify bidding increments, waive terms and conditions set forth herein, impose additional terms and conditions, including with respect to Qualified Bids, Successful Bids, Backup Bids, Minimum Overbids, adjourn or cancel the Auction, and adjourn the Sale Hearing.

14

**Exhibit 2**

**Sale Notice**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                                      :
In re                                                 :          Chapter 11
                                                      :
GOLFSMITH INTERNATIONAL                               :          Case No. 16-_____ (___)
HOLDINGS, INC., et al.,                               :
                                                      :          (Jointly Administered)
             Debtors.¹                                :
                                                      :
------------------------------------------------------x
```

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On September 14, 2016, Golfsmith International Holdings, Inc. and its debtor affiliates in the above-captioned cases (collectively, the "**Debtors**" or "**Golfsmith**") filed with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") a motion [D.I __] (the "**Motion**") for the entry of (i) an order (the "**Bidding Procedures Order**")² (a) authorizing and approving bidding procedures (the "**Bidding Procedures**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") or any portion thereof; (b) scheduling an auction (the "**Auction**") of the Assets; (c) scheduling a hearing (the "**Sale Hearing**") to consider approval of the Sale; (d) authorizing and approving the form and manner of notice of the Auction and Sale Hearing, notice to each non-Debtor counterparty to an executory contract or unexpired lease (collectively the "**Contracts**") of the Debtors' calculation of the amount necessary to cure all monetary defaults thereunder (the "**Cure Costs**"), and notice of proposed assumption and assignment of certain Contracts (collectively, the "**Proposed Assumed Contracts**") in connection with a particular sale transaction (each, a "**Sale Transaction**"); (e) authorizing and approving procedures for the assumption and

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Golfsmith International Holdings, Inc. (4847); GMAC Holdings, LLC (3331); Golf Town USA Holdco Limited (5562); Golf Town USA Holdings Inc. (7038); Golf Town USA, LLC (0259); Golfsmith 2 GP, L.L.C. (2218); Golfsmith Europe, L.L.C. (2408); Golfsmith Incentive Services, L.L.C. (2730); Golfsmith International, Inc. (7337); Golfsmith International, L.P. (4257); Golfsmith Licensing, L.L.C. (5499); Golfsmith NU, L.L.C. (2404); and Golfsmith USA, L.L.C. (2405).  The Debtors' corporate headquarters is located at 11000 North IH-35, Austin, TX 78753.

² Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures and the Bidding Procedures Order, as applicable.  Any summary of the Bidding Procedures or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

assignment of Contracts; and (f) granting related relief; and (ii) entry of one or more orders, as applicable, authorizing and approving (a) the Sale of the Assets free and clear of all liens, claims, interests, or encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets, with liens to attach to the proceeds of the such sale(s); (b) the assumption and assignment of the Proposed Assumed Contracts; and (c) granting related relief.

2.        On _____, 2016, the Bankruptcy Court entered the Bidding Procedures Order [D.I ___].  Pursuant to the Bidding Procedures Order, any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined in the Bidding Procedures) for the relevant Assets to the following parties (i) the Debtors, Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (ii) the attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); and (iii) the Debtors' investment banker, Jefferies LLC, 520 Madison Avenue, New York, New York 10022 (Attn: Robert J. White) (the foregoing parties, the "**Bid Notice Parties**") on or before **October 17, 2016 at 5:00 p.m. (prevailing Eastern Time)** (**the "Bid Deadline"**).

3.        If the Debtors receive at least one timely Qualified Bid with an acceptable purchase price by the Bid Deadline, the Debtors will conduct the Auction.  The Auction, if required, will be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 on **October 19, 2016 at 10:00 a.m. (prevailing Eastern Time)**, or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties (as defined in the Bidding Procedures) and providing notice to the Sale Notice Parties identified in the Bidding Procedures.

4.        Objections to a Sale Transaction  (each, a "**Sale Objection**"), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code and entry of any Sale Order (other Adequate Assurance Objections (as hereinafter defined)) must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (iii) be filed with the Court and served on (a) Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (b) the attorneys for the Debtors, (x) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and  (y) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); (c) the attorneys for any official committee of unsecured creditors appointed in these chapter 11 cases; (d) the attorneys for the DIP Lenders, (x) Morgan, Lewis & Bockius LLP, One Federal Street, 32nd Floor, Boston, MA 02110 (Attn: Sandra J. Vrejan, Esq. and Julia Frost-Davies, Esq.); and (y) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne, Esq.); (e) the attorneys (if applicable) of any applicable Successful Bidder(s); (f) the attorneys (if applicable) of any applicable Backup Bidder; and (g) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.)

2

(the foregoing parties, the "**Objection Recipients**") by **October 21, 2016, at 5:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"). All Sale Objections not otherwise resolved by the parties prior thereto shall be heard at the Sale Hearing.  The failure of any party to timely file with the Court and serve on the Objection Recipients a Sale Objection by the Sale Objection Deadline forever shall be barred from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation and performance of the applicable Sale Transaction(s) contemplated by an applicable asset purchase agreement with a Successful Bidder (as defined in the Bidding Procedures), including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

5.     The Sale Hearing will take place on _____, 2016 at _ _: _ _ **[a.m./p.m.]** before the Honorable _____, United States Bankruptcy Judge, in the Bankruptcy Court, located at 824 N. Market St, Wilmington, DE 19801.  The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted the terms of a Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to a Sale Order.

6.     The Debtors reserve the right to, in their reasonable business judgment, and in consultation with the Consultation Parties, modify the Bidding Procedures at any time, including, without limitation, to extend deadlines and proposed dates set forth therein, including extending the Bid Deadline, modifying the date of the Auction, and adjourning and/or rescheduling the Sale Hearing. This Notice is subject to the fuller terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.

Parties interested in receiving additional information, including, with regard to the Sale, the Assets, the Auction, or the Bidding Procedures may make requests to (i) the Debtors, Golfsmith International Holdings, Inc. 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka (Bcejka@alvarezandmarsal.com)), and (ii) the Debtors' investment banker, Jefferies LLC, 520 Madison Avenue, New York, New York 10022 (Attn:  Robert J. White (rwhite@jefferies.com)).

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC (http://cases.primeclerk.com/Golfsmith).  Copies of these documents also are available for inspection during regular business hours at the Office of the Clerk of the Bankruptcy Court, located at 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

3

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

Dated: _____2016
       Wilmington, Delaware

                                    _____
                                      RICHARDS, LAYTON & FINGER, P.A.
                                      Mark D. Collins (No. 2981)
                                      John H. Knight (No. 3848)
                                      Zachary I. Shapiro (No. 5103)
                                      Brett M. Haywood (No. 6166)
                                      One Rodney Square
                                      920 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone:  (302) 651-7700
                                      Facsimile:  (302) 651-7701

                                      -and-

                                      WEIL, GOTSHAL & MANGES LLP
                                      Michael F. Walsh (*pro hac vice* admission pending)
                                      David N. Griffiths (*pro hac vice* admission pending)
                                      Charles M. Persons (*pro hac vice* admission pending)
                                      767 Fifth Avenue
                                      New York, New York  10153
                                      Telephone:  (212) 310-8000
                                      Facsimile:  (212) 310-8007

                                      *Proposed Attorneys for the Debtors*
                                      *and Debtors in Possession*

4

**Exhibit 3**

**Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------x
                           :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **GOLFSMITH INTERNATIONAL** | : | **Case No. 16-_____ (___)** |
| **HOLDINGS, INC.,** *et al.,* | : | |
| | : | **(Jointly Administered)** |
| Debtors.[1] | : | |
| | : | |

-------------------------------------------------------x

**NOTICE OF POSSIBLE ASSUMPTION**
**AND ASSIGNMENT OF CERTAN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

       1.     On September 14, 2016, Golfsmith International Holdings, Inc. and its debtor affiliates in the above-captioned cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") a motion [D.I __] (the "**Motion**") for the entry of (i) an order (the "**Bidding Procedures Order**")[2] (a) authorizing and approving bidding procedures (the "**Bidding Procedures**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, in connection with the sale or disposition (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") or any portion thereof; (b) scheduling an auction (the "**Auction**") of the Assets; (c) scheduling a hearing (the "**Sale Hearing**") to consider approval of the Sale; (d) authorizing and approving the form and manner of notice of the Auction and Sale Hearing, notice to each non-Debtor counterparty (each, a "**Counterparty**") to an executory contract or unexpired lease (collectively the "**Contracts**") of the Debtors' calculation of the amount necessary to cure all monetary defaults thereunder (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Golfsmith International Holdings, Inc. (4847); GMAC Holdings, LLC (3331); Golf Town USA Holdco Limited (5562); Golf Town USA Holdings Inc. (7038); Golf Town USA, LLC (0259); Golfsmith 2 GP, L.L.C. (2218); Golfsmith Europe, L.L.C. (2408); Golfsmith Incentive Services, L.L.C. (2730); Golfsmith International, Inc. (7337); Golfsmith International, L.P. (4257); Golfsmith Licensing, L.L.C. (5499); Golfsmith NU, L.L.C. (2404); and Golfsmith USA, L.L.C. (2405).  The Debtors' corporate headquarters is located at 11000 North IH-35, Austin, TX 78753.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures and the Bidding Procedures Order, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

"**Cure Costs**"), and notice of proposed assumption and assignment of certain Contracts (collectively, the "**Proposed Assumed Contracts**") in connection with a particular sale transaction (each, a "**Sale Transaction**"); (e) authorizing and approving procedures for the assumption and assignment of Contracts; and (f) granting related relief; and (ii) entry of one or more orders (each, a "**Sale Order**"), as applicable, authorizing and approving (a) the Sale of the Assets free and clear of all liens, claims, interests, or encumbrances, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets, with liens to attach to the proceeds of the such sale(s); (b) the assumption and assignment of the Proposed Assumed Contracts; and (c) granting related relief.

2.      On _____, 2016, the Bankruptcy Court entered the Bidding Procedures Order [D.I. ___] approving the relief requested in the Motion.

3.      The Sale Hearing will take place on _____, **2016 at _ _: _ _ [a.m./p.m.]** before the Honorable _____, United States Bankruptcy Judge, in the Bankruptcy Court, located at 824 N. Market St, Wilmington, DE 19801.  The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted the terms of a Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to a Sale Order.

4.      In connection with the Sale, and in accordance with the Assumption and Assignment Procedures set forth in the Motion and the Bidding Procedures Order, the Debtors may seek to assume and assign to Successful Bidder(s) (as defined in the Bidding Procedures) at the Auction certain Contracts of the Debtors. Each of the Debtors' Contracts is identified on the Contracts Schedule attached hereto as **Schedule 1**. The inclusion of any Contract on Schedule 1 does not constitute an admission that a particular Contract is an executory contract or unexpired lease of or require or guarantee that such Contract will be assumed or assigned, and all rights of the Debtors with respect thereto are reserved. The Cure Costs, if any, that the Debtors believe is required to be paid to the applicable Counterparty to each of the Contracts to cure any monetary defaults under such contracts pursuant to Bankruptcy Code sections 365(b)(1)(A) and (B) is set forth on the Contracts Schedule.

5.      Any Counterparty that wishes to object to the proposed assumption, assignment, and sale of a Proposed Assumed Contract, the subject of which objection is the Debtors' proposed Cure Costs to cure any outstanding monetary defaults then existing under such contract (each, a "**Cure Objection**") shall file with the Court and serve its Cure Objection on (i) the Debtors, Golfsmith International Holdings, Inc., 11000 North IH-35, Austin, Texas 78753 (Attn: Brian E. Cejka, David Roussy, and David Bushland); (ii) the attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Michael F. Walsh, Esq., David N. Griffiths, Esq., and Charles M. Persons, Esq.); and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:  Mark D. Collins, Esq., Zachary I. Shapiro, Esq., and Brett M. Haywood, Esq.); (iii) the attorneys for any official committee of unsecured creditors appointed in these chapter 11 cases; (iv) the attorneys for the DIP Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, 32nd Floor, Boston, MA 02110 (Attn: Sandra J. Vrejan, Esq. and Julia Frost-Davies, Esq.); and (b) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Kurt F. Gwynne, Esq.); (v) the attorneys (if applicable) of any applicable

Successful Bidder(s); (vi) the attorneys (if applicable) of any applicable Backup Bidder(s) (as defined in the Bidding Procedures); and (vii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.) (the foregoing parties, the "**Objection Recipients**") by **October 21, 2016, at 5:00 p.m. (prevailing Eastern Time)** (**the "Cure Objection Deadline"**).

Any Cure Objection must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof.

6.    The Bidding Procedures Order requires that the Debtors and a Counterparty that has filed a Cure Objection first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the amount to be paid or reserved with respect to such objection shall be determined by the Court at the Sale Hearing.  The Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph.  All other objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to, and under a Contract, if it is ultimately designated a Proposed Assumed Contract, will be heard at the Sale Hearing.

7.    If a timely Cure Objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtors' discretion, after consulting with the Consultation Parties (as defined in the Bidding Procedures) and the applicable Successful Bidder, be adjourned (an "**Adjourned Cure Objection**") to a subsequent hearing.  An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction; provided that, the Debtors maintain a cash reserve equal to the cure amount the objecting Counterparty believes is required to cure the asserted monetary default under the applicable Proposed Assumed Contract.  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Proposed Assumed Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the applicable Successful Bidder, as of the closing date of the applicable Sale Transaction.

8.    **If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless such Counterparty has timely filed an Adequate Assurance Objection (as hereinafter defined) with respect to the Proposed Assumed Contract) to the applicable Successful Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale.  The Cure Costs set forth in the Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Proposed Assumed Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Proposed Assumed Contract, or any other document, and the Counterparty to the Proposed Assumed Contract shall be deemed to have consented to the Cure Costs and forever shall be barred from asserting any other claims related to such Proposed Assumed Contract against the Debtors or any Successful Bidder(s), or the property of any of them.**

9.      Any Counterparty to a Proposed Assumed Contract that wishes to object to the proposed assumption, assignment, and sale of the Proposed Assumed Contract, the subject of which objection is a Successful Bidder's proposed form of adequate assurance of future performance with respect to such contract (each, an "**Adequate Assurance Objection**") shall file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than **October 27, 2016, at 5:00 p.m. (prevailing Eastern Time)** (the "**Adequate Assurance Objection Deadline**"); provided that, if the Sale Hearing is adjourned to a later date, the Adequate Assurance Objection Deadline shall be at 5:00 p.m. (prevailing Eastern Time) two (2) days prior to the Sale Hearing.

10.      The Bidding Procedures Order requires that the Debtors and a Counterparty that has filed an Adequate Assurance Objection first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance of the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

11.      **If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption, assignment, and sale of the Proposed Assumed Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Proposed Assumed Contract) to the applicable Successful Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The applicable Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.**

12.      The inclusion of a Contract or other document or Cure Costs on the Contracts Schedule attached hereto as Schedule 1 or on any Proposed Assumed Contracts Notice (as defined in the Motion) (collectively, the "**Contract Notices**") shall not constitute or be deemed a determination or admission by the Debtors, the applicable Successful Bidder(s), or any other party in interest that such contract or other document is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved). The Debtors reserve all of their rights, claims, and causes of action with respect to each Contract or other document listed on the Contract Notices. The Debtors' inclusion of any Contract on the Contract Notices shall not be a guarantee that such contract ultimately will be assumed or assumed and assigned. The Contract Notices shall be without prejudice to each Successful Bidder's rights, if any, under the applicable asset purchase agreement, to subsequently exclude Proposed Assumed Contracts from the assumption or assignment prior to the closing of an applicable Sale Transaction.

13.      The Debtors' assumption and/or assignment of a Contract is subject to approval by the Bankruptcy Court and consummation of the Sale. Absent consummation of the Sale and entry of a Sale Order approving the assumption and/or assignment of the Contracts, the

Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

14.    Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Prime Clerk LLC (http://cases.primeclerk.com/Golfsmith).   Copies of these documents also are available for inspection during regular business hours at the Office of the Clerk of the Bankruptcy Court, located at 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

Dated: _____, 2016
      Wilmington, Delaware

                                        _____
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        Mark D. Collins (No. 2981)
                                        John H. Knight (No. 3848)
                                        Zachary I. Shapiro (No. 5103)
                                        Brett M. Haywood (No. 6166)
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone:  (302) 651-7700
                                        Facsimile:  (302) 651-7701

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Michael F. Walsh (*pro hac vice* admission pending)
                                        David N. Griffiths (*pro hac vice* admission pending)
                                        Charles M. Persons (*pro hac vice* admission pending)
                                        767 Fifth Avenue
                                        New York, New York  10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007

                                        *Proposed Attorneys for the Debtors*
                                        *and Debtors in Possession*