**Exhibit C**

**Engagement Letter**

Strictly Confidential

**Engagement Letter**

as of June 6, 2016

**Golf Town Canada Inc.**
610 Applewood Crescent, #302
Vaughan, ON L4K 0E3

**Golfsmith International Holdings, Inc.**
11000 North IH-35
Austin, TX 78753-3195

Attention:    David Roussy
             Chief Executive Officer

Re: <u>Advisory Services; Transaction</u>

This agreement (the "<u>Agreement</u>") confirms that Jefferies LLC ("<u>Jefferies</u>") has been engaged by Golf Town Canada Inc. ("<u>Golf Town</u>"), a Canadian Corporation, and Golfsmith International Holdings, Inc. ("<u>Golfsmith</u>" and together with Golf Town, the "<u>Company</u>"), a Delaware corporation, to work with Golf Town, Golfsmith, Golfsmith International Holdings LP and its subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby (collectively, the "<u>Company Group</u>") and Alvarez & Marsal Canada Inc. ("<u>A&M</u>"), the Company's financial advisor, to provide investment banking and advisory services as set forth herein.

1.    <u>Services.</u>

   (a)    <u>M&A Transaction.</u>  During the term of this engagement, and as mutually agreed upon by Jefferies and the Company, Jefferies will coordinate with A&M and provide the Company with financial advice and assistance in connection with a possible sale, disposition or other business transaction or series of transactions involving all or a material portion of the equity or assets of the Company Group, whether directly or indirectly and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock purchase, asset purchase, recapitalization, reorganization, consolidation, amalgamation, joint venture, strategic partnership, license, a sale in proceedings under the *Companies' Creditors Arrangement Act* (Canada) or similar legislation, including, without limitation, title 11 of the United States Code (the "<u>US Bankruptcy Code</u>") (collectively, "<u>Restructuring Proceedings</u>") (in each case, including any "credit bid" made thereunder and including under a prepackaged or pre-negotiated compromise or arrangement) or other transaction (any of the foregoing, an "<u>M&A Transaction</u>"), and will have primary responsibility to implement and oversee a sales process with respect to the Company Group.

   (b)    <u>Restructuring.</u>  During the term of this engagement, and as mutually agreed upon by Jefferies and the Company and as appropriate, Jefferies will coordinate with A&M and:

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 2

        (i)     provide advice and assistance to the Company in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate) a restructuring of all or substantially all of the Company Group's 2ND lien notes and ABL/credit facility (collectively, the "Company Indebtedness"), including any offer by the Company Group with respect to all or substantially all of the outstanding Company Indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan in Restructuring Proceedings), the execution of any agreement giving effect thereto, an offer by any party to convert, exchange or acquire all or substantially all of the Company Indebtedness, or any similar balance sheet restructuring involving the Company Group (any such transaction considered in this paragraph, including any such restructuring involving all or substantially all of the Company Indebtedness effected pursuant to any Restructuring Proceedings is hereinafter referred to as a "Restructuring", and a Restructuring and an M&A Transaction, each and together, a "Transaction"); and

        (ii)    perform the following financial advisory services, among others, for the Company in connection with a Restructuring: (a) becoming familiar with, to the extent Jefferies deems appropriate acting reasonably, and analyzing, the business, operations, properties, financial condition and prospects of the Company Group; (b) assisting and advising the Company in developing a general strategy for accomplishing a Restructuring; (c) assisting and advising the Company in implementing a Restructuring; (d) assisting and advising the Company in evaluating and analyzing a Restructuring, including the value of the securities or debt instruments, if any, that may be issued in any such Restructuring; and (e) rendering such other financial advisory services as may from time to time be agreed upon by the Company and Jefferies.

2.     Cooperation.

        (a)    Subject to any confidentiality or similar obligations, and other than information that the Company considers to be Privileged Information (defined below), the Company shall furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company Group, which the Company believes are relevant to the transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder, and if necessary, all solicitation materials prepared by the Company (and provided to Jefferies for comments) with respect to the Company Group, all of which will be, to the Company's knowledge, accurate and complete at the time furnished. In addition, the Company shall provide Jefferies full access, as requested, to the Company's officers, directors, employees and professional advisors in respect of whom the Company believes access is needed in connection with the transactions contemplated hereby. The Company agrees to use commercially reasonable efforts to promptly advise Jefferies of all developments materially affecting the Company Group, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Company, and agrees to use commercially reasonable efforts to ensure that

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 3

no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof.

(b)     The Company further acknowledges that Jefferies, (i) will be relying on information and data provided by the Company and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data and (iii) has not made, and will not make, any physical inspection or appraisal of the properties or assets of the Company Group and with respect to any financial forecasts that may be furnished to or discussed with Jefferies by the Company, Jefferies will assume that such forecasts have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company's management as to the expected future financial performance of the Company Group.

(c)     In connection with an M&A Transaction, Jefferies will assist the Company in preparing a customary confidential information memorandum with regard to the Company Group to use in connection with the M&A Transaction, which shall contain, to the Company's knowledge, accurate and complete information at the time prepared.

(d)     The Company acknowledges that this assignment may lead to an outcome not anticipated in this Agreement.  In the event that circumstances have changed such that this engagement requires more (or less) of Jefferies' time and efforts than originally anticipated, the Company agrees to meet and confer with Jefferies in good faith to determine the appropriate fees for Jefferies' services.

3.     Use of Name, Advice, etc.

(a)     No information or advice provided by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent.  In addition, the Company agrees that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.  The Company agrees not to disclose this Agreement, the contents hereof or the activities of Jefferies pursuant hereto to any other person without the prior written approval of Jefferies, it being understood and agreed that the Company may disclose this Agreement and its contents in any Restructuring Proceedings. Notwithstanding the foregoing, the Company may disclose any information or advice provided by Jefferies, this Agreement and the contents hereof and the activities of Jefferies pursuant hereto to the Company Group, OMERS Private Equity Inc. and its subsidiaries, Borealis Infrastructure Management Inc. and its subsidiaries and OMERS Administration Corporation and the foregoing entities' respective directors, officers, employees, advisors and debt-financing sources (collectively, "Representatives").

(b)     Jefferies' advice is solely for the use and information of the Company Group and the Company's Representatives, and is only to be used in considering the

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 4

matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4.    <u>Compensation</u>. The Company agrees to pay Jefferies each of the following:

· (a)    A monthly fee (the "<u>Monthly Fee</u>") equal to $125,000 per month until the expiration or termination of this Agreement. The first Monthly Fee shall be payable upon the execution of this Agreement, and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary thereafter. Fifty percent of any Monthly Fees actually paid to Jefferies in excess of $375,000 shall be credited against the fee due to Jefferies under Section 4(b) or 4(c) below.

(b)    Upon the consummation of a Restructuring, a transaction fee in an amount equal to $2.125 million.

(c)    Promptly upon closing of an M&A Transaction, a fee equal to $2.125 million.

Jefferies shall be due the fees set forth above upon the first to occur of a Restructuring or an M&A Transaction, but shall not be due two fees in the event both an M&A Transaction and a Restructuring occur.

(d)    If, following or in connection with the termination, abandonment or failure to occur of any proposed M&A Transaction in respect of which the Company entered into an agreement during the term of this Agreement or during the 12-month period following the effective date of termination of this Agreement, other than termination by Jefferies not in connection with a material breach of this Agreement by the Company (with notice and an opportunity to cure) or termination by the Company for Cause prior to the Company's entering into an agreement for a Transaction, the Company or any affiliate is entitled to receive a break-up, termination, "topping," expense reimbursement, earnest money payment or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination, abandonment or failure to occur) (each and together, "<u>Termination Payments</u>"), Jefferies shall be entitled to a cash fee (the "<u>Break-Up Fee</u>"), payable promptly following the Company's or such affiliate's receipt of such amount, equal to 25% of the aggregate amount of all Termination Payments paid to the Company or such affiliate; <u>provided</u>, <u>however</u>, that the Break-Up Fee shall not be greater than the Transaction Fee that would have been payable had the proposed M&A Transaction been consummated, and <u>provided further</u> that if both a Break-Up Fee and a fee under Section 7 of this Agreement is payable, the aggregate amount paid to Jefferies in connection with such fees cannot exceed $2.125 million. For the purposes of this Agreement, "<u>Cause</u>" means Jefferies' or its affiliates' breach of this Agreement, gross negligence, willful misconduct or fraud (as determined by a non-appealable judgment by a court), with notice and an opportunity to cure, if curable.

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 5

(e)    The Company shall use its commercially reasonable efforts to provide for the payment in full, in cash, of any fees described in this Section 4 in any plan submitted to the Court (as defined below) for confirmation.  Notwithstanding the foregoing, in the event that a Transaction is consummated pursuant to a prepackaged plan of reorganization and there is a filing under chapter 11 in respect of the Company, the fees payable to Jefferies hereunder shall be deemed earned and payable in full upon the receipt by the Company of the votes necessary to approve such a prepackaged plan of reorganization (whether through cramdown or otherwise) prior to the filing of a chapter 11 case, it being acknowledged that the Company may not pay such amount at such time if the Company, in its discretion, determines that it does not have the liquidity to do so.  In such event, Jefferies shall provide during the chapter 11 case such additional services as are reasonably necessary (including testimony) to confirm and consummate such prepackaged plan without additional compensation.

The Company acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.  The Company further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Company in connection with any Transaction and that the value to the Company of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.    Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Company will reimburse Jefferies, within 30 days of receipt of an invoice therefor (and if unpaid after 30 days from delivery of an invoice, shall thereafter carry interest from such delivery date, both before and after any judgment, at a rate equivalent to LIBOR plus 1% compounded quarterly until payment), for all reasonable, documented, out-of-pocket expenses (including reasonable fees and expenses of its counsel) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.    Indemnification, etc.    As further consideration under this Agreement, the Company shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.    Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect damages arising out of or in connection

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 6

with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

7.      Termination. Jefferies' engagement hereunder will commence upon the execution of this Agreement by both the Company and Jefferies, and will continue until terminated by either party on 10 days' written notice to the other.  Upon any termination of this Agreement, the Company shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, other than termination by Jefferies not in connection with a material breach of this Agreement by the Company (with notice and an opportunity to cure) or termination by the Company for Cause prior to the Company's entering into an agreement for a Transaction (in which case no fee shall be payable), Jefferies shall be entitled to the applicable fee or fees set forth in Section 4(b) or 4(c) (as applicable) if, on or prior to 12 months from the effective date of termination of this Agreement, the Company consummates, or enters into an agreement which subsequently results in, a Transaction, provided, however, that if both a Break-Up Fee and a fee under this Section 7 is payable, the aggregate amount paid to Jefferies in connection with such fees cannot exceed $2.125 million.  Any such fee shall be paid as set forth in Section 4.  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-8, 12-18, and Schedule A, which shall survive such termination.

8.      Privileged Information. In order for Jefferies to provide the services contemplated under this Agreement in an effective manner within the requisite time period, it will be necessary for the Company and its legal counsel to share attorney-client privileged and solicitor-client privileged information (the "Privileged Information") with a limited number of individuals within Jefferies on a confidential basis. It is the parties' express intention that all such shared Privileged Information shall remain subject to a common interest privilege that will protect the Company's attorney-client privilege and solicitor-client privilege in the Privileged Information during such time as the Privileged Information remains in Jefferies' possession, control or power.  Jefferies acknowledges that it does not have the power or authority to waive the Company's privilege in connection with the Privileged Information.  In the event Jefferies or any employee, agent or other person connected to Jefferies is ordered or otherwise required by law to disclose the Privileged Information, or is requested to disclose the Privileged Information by a person, court, regulatory authority, government or other entity with the power to order or obtain an order for such disclosure (the "Authority"), Jefferies will (a) immediately notify the Company, (b) on a reasonable efforts basis, refuse access to such Privileged Information, and (c) if disclosure is required by law, advise the Authority that (i) the Company is permitting disclosure only to the extent required by law and for the limited purpose of the Authority's exercise of statutory authority, (ii) the Company does not intend to waive privilege, and (iii) the Company expects its Privileged Information to be held by the Authority as privileged and confidential material.

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 7

9.     Exclusivity.  During the term of the Agreement, the Company will not, and will instruct its Representatives not to, engage any other person, other than A&M, to perform any services for the Company or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies.  Notwithstanding the Company's obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Company, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.  In addition, (i) Jefferies' fees shall not be reduced or otherwise affected on account of such retention of A&M and (ii) no action or omission solely of A&M shall in any way be attributed to Jefferies or otherwise affect Jefferies' rights or the Company's obligations hereunder (including, without limitation, with respect to Schedule A attached hereto).

10.     Court Approval.  If the Company becomes a debtor under Restructuring Proceedings, the Company shall seek approval of this Agreement by the court having jurisdiction over such cases (the "Court").  The Company shall supply Jefferies with a draft of any application and proposed order approving the retention of Jefferies' hereunder sufficiently in advance of its filing to enable Jefferies to review and approve, acting reasonably, any such application or order prior to its filing.  Jefferies shall have no obligation to provide any services under this Agreement if the Company becomes a debtor under Restructuring Proceedings unless Jefferies' retention is approved by a final order of the Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is acceptable to Jefferies in its sole discretion (in the case of the US Bankruptcy Code, Jefferies' retention to be approved under section 328(a) of the Bankruptcy Code (and not subject to any other standard of review under section 330 of the Bankruptcy Code) by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is acceptable to Jefferies in its sole discretion).  Prior to commencing Restructuring Proceedings, the Company shall pay to Jefferies in cash all amounts then due and payable to Jefferies under this Agreement.

11.     Disclaimer.

        (a)     The Company acknowledges that Jefferies' direct parent, Jefferies Group LLC, is a full service financial institution engaged in a wide range of investment banking and other activities (including investment management, corporate finance, securities issuing, trading and research and brokerage activities), and that Jefferies Group LLC's ultimate parent, Leucadia National Corporation (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), the "Jefferies Group"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, in each case from which conflicting interests, or duties, may arise.  Information that is held elsewhere within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain)

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 8

knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Company and of potential participants in the transactions contemplated hereby for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with securities laws and regulations and the confidentiality agreement between Jefferies and the Company in connection with such activities. Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. Subject to the confidentiality agreement between Jefferies and the Company, the Jefferies Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby. To ensure compliance with its confidentiality and use obligations hereunder, the Jefferies Group shall use separate working groups, ethical walls within the Jefferies Group, and any other measure that may be reasonably necessary in connection with the foregoing activities to maintain the confidentiality of the Company's confidential information.

(b)     The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (v) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

12.     Governing Law.   This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 9

13.    <u>Exclusive Jurisdiction</u>.   Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this Agreement to this Section 13 (any of the foregoing, a "<u>Claim</u>") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law.   The Company and Jefferies agree and consent to personal jurisdiction, service of process and venue of such courts, waive all right to trial by jury for any claim and agree not to assert the defense of forum non-conveniens.   The Company and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier, or personal delivery, to the addresses set forth or referred to in Section 16 hereof.   In the event of any litigation resulting from this Agreement, the prevailing party, as determined by a final non-appealable decision rendered by a court of competent jurisdiction, shall be entitled to be reimbursed by the non-prevailing party for all reasonable, documented, out-of-pocket costs and expenses (including, without limitation, reasonable fees and expenses of counsel).   The Company and Jefferies further agree that a final, non-appealable judgment in respect of any claim brought in any such court shall be binding and may be enforced in any other court having jurisdiction over the party against whom the judgment is sought to be enforced.

14.    <u>Payments</u>.   All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies.   The Company's obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

15.    <u>Announcements, etc.</u>   The Company agrees that Jefferies may, with the Company's prior written consent, acting reasonably, following the announcement or disclosure of a Transaction, describe the Transaction in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Company's name and logo in connection therewith.   The Company agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role as financial advisor to the Company in connection with the Transaction in form and substance reasonably satisfactory to Jefferies. Notwithstanding the foregoing, any media, marketing materials, announcement or press release described in this Section 15 shall not be released or distributed to the public without the prior written consent of the Company, acting reasonably.

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 10

16.    <u>Notices</u>.  Notice required to be given in writing pursuant to any of the provisions of this Agreement shall be sent by next-day delivery using a nationally-recognized overnight courier or hand-delivered (a) if to the Company, at the addresses set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

17.    <u>Miscellaneous</u>.  This Agreement, and the confidentiality agreement between Jefferies and the Company, constitute the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto.  This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party.  This Agreement is solely for the benefit of the Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of this Agreement; <u>provided</u> that Jefferies may, in the performance of its services hereunder, procure the services of other members of the Jefferies Group (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement.  If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof.  Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.  This Agreement has been reviewed by all of the signatories hereto and its counsel.  There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

18.    <u>Patriot Act</u>.    Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "<u>Patriot Act</u>"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

**Golf Town Canada Inc. and Golfsmith International Holdings, Inc.**
June 6, 2016
Page 11

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

**JEFFERIES LLC**

By _____

    Name: Robert J. White
    Title: Managing Director

Accepted and Agreed:

**GOLF TOWN CANADA INC.**

By _____

    Name: David Roussy
    Title: CEO

By _____

    Name: Dave Bushland
    Title: CFO

**GOLFSMITH INTERNATIONAL HOLDINGS, INC.**

By _____

    Name: David Roussy
    Title: CEO

By _____

    Name: Dave Bushland
    Title: CFO

## SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Company. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and it affiliates and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Company shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by any Indemnified Person to the extent such Losses are determined, by a final, non-appealable judgment by a court of competent jurisdiction, to have resulted primarily from such Indemnified Person's fraud, negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company).

The Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company)

The Company and the Indemnified Persons agree that neither party will settle or compromise or consent to the entry of any judgment in, admit liability in respect of, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless the Company and Jefferies has given its prior written consent, or, in the case of a settlement, compromise, consent or termination of an Action by the Company, such settlement, compromise, consent or termination (i) includes an express unconditional release of the relevant Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If any Action is commenced, as to which an Indemnified Person proposes to demand indemnification, such Indemnified Person shall notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Person to notify the Company shall not relieve the Company from its obligations hereunder (except to the extent that the Company is materially prejudiced by such failure to promptly notify). The Company shall be entitled to assume the defense of any such Action, exercisable by giving written notice to an Indemnified Person with reasonable promptness after receipt of written notice from the Indemnified Person of such assertion or commencement, including the employment of counsel reasonably satisfactory to the Indemnified Person, except as provided below.

The Indemnified Person shall have the right to employ separate counsel of its own choice to represent it in any such Action and to participate in the defense thereof, but the fees and expenses of any such separate counsel shall be at the expense of the Indemnified Person, unless (i) the Company has failed promptly to assume the defense and employ counsel reasonably satisfactory to the Indemnified Person in accordance with the preceding sentence; (ii) the use of counsel chosen by the Company to represent the Indemnified Person would present such counsel with a conflict of interest, (iii) the Indemnified Person shall have been advised by counsel that the representation of both parties by the same counsel would be inappropriate due to actual or potential differing interests between them, including a situation in which one or more legal defenses may be available to such Indemnified Person that are inconsistent with those available to the Company (in which case the Company shall not be entitled to assume the defense of such action, suit or investigation on behalf of such Indemnified Person); or (iv) the Company authorizes the Indemnified Person to employ separate counsel at the Company's expense; provided, however, that the Company shall not, in connection with any one such Action, or series of separate but substantially similar Actions arising out of the same general allegations, be liable for fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Persons (other than local counsel); and such counsel shall, to the extent consistent with its professional responsibilities, cooperate with the Company and any counsel designated by the Company.

If, for any reason (other than by reason of a final, non-appealable judgment by a court of competent jurisdiction as to the fraud, gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company and its securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and its

## SCHEDULE A

securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Company and its securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Company agrees to reimburse the Indemnified Persons for all costs and expenses (including, without limitation, fees and expenses of counsel) incurred by the Indemnified Persons (including all such costs and expenses incurred to enforce the terms of this Schedule A) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person whether or not in connection with litigation in which any Indemnified Person is a named party; provided that, if any such reimbursement is for expenses relating to a Loss that is determined, by a final, non-appealable judgment by a court of competent jurisdiction, to have resulted primarily from such Indemnified Person's fraud, gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Company), such Indemnified Person shall promptly repay such amount to the Company.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be the sole and exclusive remedy of the Indemnified Persons against the Company in respect of any Losses, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services thereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.

6589834